304 So.2d 861 (1974)
James M. STEEL et al., Plaintiffs-Appellants,
v.
AETNA LIFE & CASUALTY et al., Defendants-Appellees.
No. 4796.
Court of Appeal of Louisiana, Third Circuit.
November 27, 1974.
Rehearing Denied January 9, 1975.
*862 Mestayer & Simon by S. Gerald Simon, New Iberia, for plaintiffs-appellants.
J. Winston Fontenot, Davidson, Meaux, Onebane & Donohoe by Timothy J. McNamara, Voorhies & Labbe by D. Mark Bienvenu, Pugh & Boudreaux by Charles Boudreaux, Lafayette, for defendants-appellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Plaintiffs James M. Steel, individually and in his capacity as administrator of the estate of his minor child Nadine Marie Steel, and the child's mother Mrs. Steel, appeal the judgment dismissing their medical malpractice claim on exceptions of prescription. Defendants are neurosurgeon Dr. J. Robert Rivet, radiologist Dr. Lazard D. Klinger, the Lafayette General Hospital and their liability insurers Aetna Life & Casualty Company, St. Paul Fire and Marine Insurance Company, and The Continental Insurance Companies. We affirm the finding that medical malpractice is a tort claim subject to prescription of one year.
The two issues presented are: Did plaintiffs' tort claim prescribe before it was filed? If it did, do plaintiffs have a claim in contract for the alleged malpractice? The first question is answered in the affirmative and the second in the negative.
Suit was filed May 31, 1973 on the basis of alleged medical malpractice committed during the period August 6, 1970 through September 8, 1970.
Nadine was nine years old when she was admitted to the hospital on August 6, 1970 with a complaint of recent difficulties in walking. She was nevertheless able to walk and was continent. The physical examination, x-ray and myelographic studies located an obstruction to the spinal cord at the thoracic 4 area. Surgery was performed on August 11, 1970 and a benign aneurysmal bone cyst was found in that area. The cyst had not shown up on the x-ray studies. A substantial part of the cyst was removed and after extensive bleeding was treated, the operation closed with a good result. Nadine's condition improved until the morning of August 13 when she became incontinent and lost feeling in both legs. Emergency surgery was performed that morning and a blood clot *863 was found where surgery had been performed. The clot had obstructed the spinal cord where the tumor had previously existed. Additional surgery was performed on August 26, 1970 to make more room for the spinal cord because of the edema present. Medications were given to reduce the swelling.
Nadine has been a paraplegic and incontinent since August 13, 1970. There has been no substantial improvement in her condition since that date.
The trial court properly applied the one year prescription provided by LSA-C.C. art. 3536 for actions ". . . resulting from offenses or quasi offenses."
Plaintiffs rely on the doctrine of "contra non valentem agere nulla currit praescriptio"that "no prescription runs against a person unable to bring an action." The doctrine is thoroughly reviewed in Hyman v. Hibernia Bank & Trust Company, 139 La. 411, 71 So. 598 (1916).
To apply the doctrine, plaintiffs must establish that: 1) the cause of action did not manifest itself with sufficient certainty to be susceptible of proof [Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582 (1910); Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.App. 1 Cir. 1970)]; or 2) defendants knowingly concealed information from plaintiffs, or through defendants' conduct misled or lulled plaintiffs into inaction [Martin v. Jennings, 10 La.Ann. 553 (1855); Dagenhart, supra].
Plaintiffs claim that they did not know of the permanent nature of their daughter's paralysis until July, 1972. The trial court's factual determination to the contrary is well supported by the testimony taken at the full and complete trial of this issue. Plaintiffs knew that Nadine was able to walk before the operations and since the operations she has been paralyzed below the waist. They admitted that this made them curious and that they thought something unusual had happened.
The trial court properly applied the rule set forth in Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970). The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not willful and does not result from negligence (of the plaintiffs), and the doctrine has been limited to cases where the (physician) has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the (injured party) from ascertaining knowledge of the existence of the (injury). There is no manifest error in the determination that plaintiffs failed to meet this requirement.
While defendant physicians never told Nadine or her parents that her condition was permanent or irreversible, there is no suggestion in the record that they attempted to hide the fact that Nadine has been paralyzed from the waist down since the operations. Some eighteen months before suit was filed, plaintiffs told other physicians in St. Louis, Missouri that Nadine had been incontinent since the operations.
As the trial judge noted, medicine is an inexact science, and one should not say with certainty that Nadine could never recover some use of her legs and some control over her elimination systems.
All allegations of negligence concern matters available to plaintiffs when their daughter left the hospital in September 1970. Plaintiffs seem to argue that prescription does not begin to toll until the physicians or hospital send notice that they have been negligent. These parties stoutly maintain that Nadine was properly treated and that they were not negligent. The fact that Nadine continued to receive care and attention from one defendant until October 1972, does not suggest that defendants knowingly concealed information from plaintiffs, or misled or lulled plaintiffs into inaction. On the contrary, after the August 13, 1970 operation, the neurosurgeon *864 explained to Nadine's mother that he found the blood clot impinging on the spinal cord in the area where the August 11 surgery had been performed, and this impingement caused the paralysis.
Plaintiffs argue that Duhon v. Boustany, 239 So.2d 180 (La.App. 3 Cir. 1970) supports their position. In Duhon a summary judgment had been granted on the basis of prescription. We reversed on finding the affidavits created an issue as to when plaintiff should have known about his claim that he had received negligent treatment. We distinguish Duhon for the reason that here, that issue has been completely tried by the trial court.
Plaintiffs knew or should have known that the operations were related to the paralysis no later than September 8, 1970. The trial court followed the holding in Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (La.App. 1 Cir. 1970). The factual determination that the cause of action manifested itself with sufficient certainty to be susceptible of proof by that date is well documented in the record. There is no manifest error in that holding.

ACTION ALLEGED IN CONTRACT
The allegations upon which plaintiffs contend that their claim is one in contract are that the neurosurgeon, radiologist, and hospital expressly or impliedly contracted to treat Nadine "with a high degree of professional skill and care." They allege a breach of that express or implied contract in that defendants allegedly failed to exercise the highest degree of professional skill and care.
Plaintiffs rely on Creighton v. Karlin, 225 So.2d 288 (La.App. 4 Cir. 1969), which held that medical malpractice actions may be brought in contract (subject to a ten year prescriptive period) under the implied contract by the medical profession to use the standard of professional skill and care customarily prevailing in the locality. See also, Barrios v. Sara Mayo Hospital, 264 So.2d 792 (La.App. 4 Cir. 1972).
We find the exposition in Creighton to be persuasive. But this holding conflicts with the Supreme Court decision in Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963).
We read Phelps to hold that a medical malpractice claim cannot be brought under the theory of contract unless the physician warrants or promises a particular result.
Plaintiff does not contend that defendants warranted a particular result. Although article 27 of the petition alleges that Dr. Rivet assured a "favorable result," counsel for plaintiff stated in oral argument and in brief, that they do not base their claims on a contract warranting a particular result, but on the alleged failure of defendants to meet their implied warranty to use a high degree of professional skill and care in treating Nadine.
Under the Phelps decision, plaintiffs have no action in contract. Plaintiffs only action for medical malpractice lies in tort, and the trial court correctly held that the tort claim had prescribed.
The problem relating to prescription in medical malpractice actions has been discussed in several relevant law review presentations. 6 Houston Law Review 919, law note by Anna McLemore Maxwell; Symposia comments by Joseph Dainow at 24 LLR 213-214, 25 LLR 355-356, 26 LLR 539, and 34 LLR 278; and 34 TLR 414, law note by Eugene Davis.
The trial court judgment is affirmed at appellants' costs.
Affirmed.