336 So.2d 540 (1976)
Clebert DAUZAT and Glenn Dauzat, Plaintiffs-Appellants,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al., Defendants-Appellees.
No. 5559.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
William Henry Sanders, Jena, and Edward A. Kaplan, Alexandria, for plaintiffs-appellants.
Allen, Gooch & Bourgeois by St. Paul Bourgeois, IV, Lafayette, and Raggio, Farrar, Cappel & Chozen by R. W. Farrar, Jr., Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
On December 1, 1975, plaintiffs, Clebert Dauzat and his son, Glenn, instituted suit against the Beauregard Memorial Baptist Hospital, Inc.; its insurer, the St. Paul Fire and Marine Insurance Company; Dr. James *541 Sauls, and/or the DeRidder Clinic for breach of an implied contract for the treatment of Glenn's fractured leg.
An exception of prescription was sustained by the trial court and plaintiffs have appealed. We affirm.
The exception was tried on the deposition of the two plaintiffs. They reveal that Glenn, then 17 years of age, was brought to the Beauregard Memorial Baptist Hospital on August 3, 1973, for treatment of a compound leg fracture sustained in a motorcycle accident. After examining Glenn's leg and the x-rays thereof which were taken, Dr. Sauls, in response to a question from Clebert Dauzat, said that he could handle it, and that he had handled worse. The leg was swollen and was placed in a splint or open cast by Dr. Sauls. At no time did any member of the hospital staff state that Glenn's leg would be cured at the hospital.
The testimony further shows that, on August 23, 1973, Glenn was discharged from the hospital and referred to an orthopedic surgeon, Dr. Richard LeBlanc. That same day Dr. LeBlanc apprised Glenn and his mother of the possibility of a tardy transfer. He stated that if he had examined Glenn sooner, he would have placed Glenn in traction. At the time of this visit, Glenn's leg was approximately two and one half inches shorter than his right leg. Mrs. Dauzat related her conversation with Dr. LeBlanc to her husband that same day. Glenn's left leg is now deformed and approximately three and one half inches shorter than his right.
The issues before this Court are:
(1) What prescriptive period is applicable in this case; and
(2) When did prescription commence to run.
I. APPLICABLE PRESCRIPTIVE PERIOD
The Dauzats urge that the undertaking of medical treatment is an implied contract and that the applicable prescriptive period is ten years.[1] This argument is without merit. In Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963), the Louisiana Supreme Court stated:
"When a physician undertakes the treatment of a case, he does not guarantee a cure, nor is any promise to effect a cure or even a partial healing to be implied, nor does the law raise from the fact of employment an implied undertaking to use ordinary skill and care. For this reason a physician cannot be held up to a standard of civil responsibility similar to that of engineers, mechanics, and shipbuilders. Of course, a physician might contract specifically to cure and he would be liable on his contract for failure, but, in the absence of such a special and peculiar contract, the fact that treatment has resulted unfavorably does not even raise a presumption of want of proper care, skill, or diligence."
In Steel v. Aetna Life & Casualty, 304 So.2d 861 (La.App.3rd Cir. 1974), writ denied, this Court followed Phelps and rejected the very same contention advanced by the Dauzats.
No staff member at Beauregard Hospital made a promise to cure Glenn. Both he and his father have admitted to this. Dr. Sauls' statement that he could handle Glenn's fractures was not a specific promise to cure. Therefore, plaintiff's claim may not be brought under the theory of contract. This action is one in tort for medical malpractice. The applicable prescriptive period is one year. La.C.C. Art. 3536; Phelps v. Donaldson, supra; Steel v. Aetna Life & Casualty, supra.
II. TIME OF COMMENCEMENT OF PRESCRIPTIVE PERIOD
In a medical malpractice case prescription begins to run when the plaintiff has actual or constructive knowledge of the *542 alleged tortious act. Duhon v. Saloom, 323 So.2d 202 (La.App. 3rd Cir. 1975).
In Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970), the Louisiana Supreme Court expounded on the doctrine of constructive notice:
". . . whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry, is sufficient to start the running of prescription."
Plaintiffs have the burden of proving lack of knowledge of the inquiry as well as any circumstances which establish that the damage was not sustained within a year of the filing of the suit. Duhon v. Saloom, supra, and the cases therein cited. They have clearly failed to sustain this burden of proof. On August 23,1973, they were made aware of a potential tortious act having occurred when Dr. LeBlanc in effect stated that other treatment should have been given. This conversation took place approximately twenty-eight (28) months before suit was filed. Therefore, the claim prescribed over sixteen (16) months prior to suit.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Considering our ultimate conclusion that plaintiff's claim is not in contract we need not consider whether the amendment to LSA-R.S. 9:5628 (Act 808 of 1975) should be applied retroactively.