354 So.2d 612 (1977)
Louis HENSON, Plaintiff-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee.
No. 11648.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
Writ Granted March 31, 1978.
*614 David C. Kimmel, Baton Rouge, of counsel for plaintiff-appellant Louis Henson.
Donald S. Zuber, Baton Rouge, of counsel for defendant-appellee St. Paul Fire & Marine Ins. Co.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Plaintiff, Louis Henson, brought this suit against defendant, St. Paul Fire and Marine Insurance Co., as the insurer of Dr. Robert A. Peden. Plaintiff alleged that Peden negligently injured him during surgery on July 5, 1973. Suit was filed on February 19, 1976. Defendant interposed the peremptory exception of prescription. No evidence was received on the exception, the defendant choosing to rely solely on the allegations of plaintiff's petition which showed that suit was filed more than one year after the surgery. St. Paul asserted that the applicable prescriptive period was one year under either the general tort prescription of C.C. Art. 3536 or the special medical malpractice prescription of R.S. 9:5628.[1] Plaintiff relied on the doctrine of contra non valentem agere nulla currit praescriptio (no prescription runs against a person unable to bring an action) as well as the assertion that the applicable prescriptive period should be ten years under the general contract prescription of C.C. Art. 3544.
For oral reasons assigned, the trial judge held that the applicable prescriptive period was one year and dismissed plaintiff's suit. We reverse and remand.
With respect to the applicable prescriptive period or periods, the fact that an action may constitute a tort does not prevent its also being a breach of contract. The plaintiff in such a situation has two remedies. Federal Insurance Co. v. Insurance Company of North America, 262 La. 509, 263 So.2d 871 (1972). This court has held that in situations where a single set of circumstances gives rise to an action in both tort and contract, the claims are considered separately in determining whether they have prescribed. Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir.), writs denied 320 So.2d 551, 553 (La.1975).
We first address ourselves to plaintiff's tort claim. The applicable prescriptive period for the tort claim is one year. Under both C.C. Art. 3536 and R.S. 9:5628 one year is provided. Therefore the adoption of the special provision in 1975 does not affect this claim. It is apparent from plaintiff's petition that this claim is prescribed unless there has been a suspension or interruption. The doctrine of contra non valentem is available in certain limited situations under Louisiana law. Being a judicially created exception to the rule that prescription runs against all persons not specifically excepted by law (C.C. Art. 3521), it is applied in a limited and restricted sense. Jackson, above.
The requirements for application of the doctrine are set out in Cartwright v. Chrysler *615 Corp., 255 La. 598, 232 So.2d 285 (1970). The basic idea behind the doctrine in tort cases is that prescription will not run against one who is unaware of his injuries or the cause of them when such ignorance is caused by the defendant. It is not necessary that the plaintiff have actual knowledge of the facts entitling him to bring his action. He is held to have knowledge of everything to which inquiry based on the knowledge which he does have would have led him. In the case under consideration Henson was aware immediately after the surgery that he had numbness and severe pain in the left side of his face. Dr. Peden informed him that this was normal and would cease in time. In October of 1974, plaintiff consulted Dr. Cox who informed him that he should wait six or eight months and the condition might improve. Under these alleged facts we find, as did the trial court, that as of October, 1974, plaintiff was on notice of sufficient facts to put him on inquiry. Up until that time plaintiff was not aware of his injury. He could reasonably have believed that his pain was a normal and temporary consequence of the operation. However, when he was told that the condition might improve he should have known that an injury had occurred which was apparently caused by the surgery. Suit was filed over one year after plaintiff received this constructive knowledge. Therefore his tort action had prescribed.
On the contractual claim defendant is apparently contending both that the claim has prescribed and that the plaintiff's petition has not stated a cause of action in contract. Defendant never filed an exception of no cause of action and has not used this phrase in brief or argument. However, we feel that his actual position is that there is no cause of action on the contractual claim. In any event, being able to notice this issue on our own motion, we do so. C.C.P. Art. 927.
Looking first to the issue of no cause of action we find that the Third Circuit has held that a medical malpractice claim cannot be considered a contractual claim unless the physician warrants or promises a particular result. Steel v. Aetna Life & Casualty, 304 So.2d 861 (La.App. 3rd Cir. 1974), writ denied 315 So.2d 144 (La.1975).[2] The Fourth Circuit has held that such a specific promise is unnecessary in order to found such an action in contract. Creighton v. Karlin, 225 So.2d 288 (La.App. 4th Cir.), writ denied 254 La. 842, 227 So.2d 590 (1969). We believe that in his petition plaintiff has sufficiently alleged the promise of a particular result to get past the no cause of action exception even under the test of the Third Circuit in Steel, above. (Plaintiff has alleged that Dr. Peden informed him that the surgery would produce a satisfactory result and warranted that no ill effects would ensue from the operation.) However, for the reasons which follow, we choose not to base our decision on this narrow ground, but rather to follow the Fourth Circuit view in Creighton, above.
When a patient goes to a doctor for treatment and the doctor agrees to treat him a contract has been entered into. "Any other conclusion is difficult to reach intellectually." Steel v. Aetna Life & Casualty, 315 So.2d 144 (La.1975) (JJ. Barham and Tate concurring in writ denial); see also C.C. Art. 1816. Any other conclusion would mean that a doctor would have no contractual action against his clients if they refused to pay him. He would be relegated to a quasi contractual theory of negotiorum gestio or unjustified enrichment. Such would certainly not be a logical conclusion.
Having determined that a contract exists in such a situation, we must decide what are the obligations of the doctor. "The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect." C.C. Art. 1903. It follows *616 naturally that the doctor's duty is that of using due care. The obligation under the contract should certainly not be less than one's duty under general tort law. Delaune v. Davis, 316 So.2d 7 (La.App. 1st Cir. 1975).
We therefore agree with the conclusion of the Fourth Circuit in Creighton. This result is also in line with the modern civilian concept of obligations de moyen and with the decisions reached by the courts in both France and Quebec. The Work of the Louisiana Appellate Courts for the 1974-1975 TermContracts in Particular, 36 La.L.Rev. 417, 421-426 (1976). It is also consistent with the rule of this circuit in attorney malpractice cases. Jackson, above. The decision of the Third Circuit appears to be an importation from the common law. See 70 C.J.S. Physicians and Surgeons § 57. It has no theoretical foundation in the civilian law of obligations. In Steel the court relied on Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963) to sustain its position. However, that case does not support the proposition asserted. In the case, although an exception of prescription was sustained as to the tort claim, trial was conducted on the contractual claim. The trial court found that a contract to straighten the plaintiff's daughter's teeth had not been proved. The Court of Appeal affirmed on the basis that the action was essentially in tort and that it had prescribed. Phelps v. Donaldson, 142 So.2d 585 (La.App. 3rd Cir. 1962). The Supreme Court, in its affirmance, followed the trial court rationale rather than that of the Court of Appeal. It was never found as a fact that the doctor performed in a substandard fashion. Apparently the plaintiff attempted to rely on the fact that her daughter's teeth were not straightened to sustain her breach of contract action. Absent proof of a contract to cure, such proof was found to be insufficient. We believe that this is the actual holding of Phelpsplaintiff simply failed to prove a breach. Our decision here is not inconsistent with that holding. If plaintiff succeeds in proving a contract to cure, he will be relieved of his burden of proving substandard conduct. But if he does not prove such a contract he can still recover by proving Dr. Peden has violated his obligation of due care.
We next move to the assertion that Henson's contractual claim has prescribed. In support of this contention defendant relies on R.S. 9: 5628 (added by Act 808 of 1975 and amended by Act 214 of 1976). Although the alleged negligent act of defendant's insured occurred prior to September 12, 1975 (the effective date of Act 808), suit was instituted after this date. Defendant asserts that prescription statutes are remedial and procedural in nature and that they therefore are to be applied retroactively. It is true that prescription statutes may be applied to causes of action arising prior to their enactment, at least so long as a reasonable time is given for the assertion of rights, if the legislature so intends. Cooper v. Lykes, 218 La. 251, 49 So.2d 3 (1950). This is well illustrated in Mire v. Hawkins, 177 So.2d 795 (La.App. 3rd Cir. 1965), affirmed at 249 La. 278, 186 So.2d 591 (1966). There a statute specifically provided for retroactive effect and included a saving clause allowing those who would be cut off by retroactive application to have one year to bring their action. Such a provision was held to be valid. However, in Act 808 the legislature did not specifically address this problem. Therefore it is our duty to ascertain the presumed legislative intent as to retroactivity.
The general rule is that when a prescriptive period is changed "the time which preceded the change of legislation or altering the period of prescription, should be reckoned according to the ancient law, and that which followed according to the new law." Goddard's Heirs v. Urquhart, 6 La. 659, 674 (1834), accord 1 Planiol, Treatise on the Civil Law, § 248 (translation by the Louisiana State Law Institute, 1959). This solution is very equitable. In the absence of an express legislative intent to the contrary, we believe it is the rule to be followed.
In applying this proportionate method to the facts of this case we find that Henson's contractual claim has not prescribed. He filed suit within six months of the effective *617 date of Act 808. Therefore over one-half of the prescriptive period under C.C. Art. 3544 would have had to elapse before Act 808's effective date in order for his claim to be prescribed. It had not done so.
The finding by the trial judge that plaintiff's tort action had prescribed was correct. However, the plaintiff has sufficiently alleged a timely breach of contract action. We therefore reverse and remand the case to the trial court for further proceedings in accordance with law. Costs in this court are to be borne by appellee. All other costs are to await a final determination on the merits.
REVERSED AND REMANDED.
NOTES
[1] The alleged offense occurred prior to the effective date of Act 808 of 1975 and Act 214 of 1976, now R.S. 9:5628.
[2] See Ball v. Siess, 351 So.2d 845 (La.App. 2nd Cir. 1977) recently decided by the Second Circuit, conforming to the views expressed by the Third Circuit in Steel v. Aetna Life & Casualty, 304 So.2d 861 (1974).