403 So.2d 728 (1981)
Helen SCIACCA
v.
Louis POLIZZI, M.D. and Julius Schmid Company, a/k/a Schmid Laboratories, Inc.
No. 81-C-0533.
Supreme Court of Louisiana.
September 8, 1981.
Carey J. Guglielmo and Richard Creed, Jr., of Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, for defendant-applicant.
Mark Alan Jolissaint, Slidell, for plaintiff-respondent.
Jerry L. Saporito, and B. Frank Davis of Bernard, Cassisa, Babst & Saporito, Metairie, for Julius Schmid Co. a/k/a Schmid Laboratories, Inc.
BLANCHE, Justice.
Plaintiff, Helen Sciacca, filed suit on May 13, 1976 against Louis Polizzi, a physician, and Julius Schmid Co. a/k/a Schmid Laboratories, Inc. She styled her suit as a "Petition for Damages Due to Breach of Contract." Plaintiff alleged therein that she suffered numerous injuries and damages as a result of Dr. Polizzi's improper insertion of a "Safety Coil" intrauterine device (IUD) into her uterus and/or because of a defect or defects in the "Safety Coil" IUD manufactured by Schmid Laboratories. Both defendants filed exceptions of prescription. The trial court sustained the exceptions and dismissed plaintiff's suit. The court of appeal affirmed the ruling on Schmid Laboratories' exception, but reversed the trial court ruling on Dr. Polizzi's exception, overruling that exception and remanding the case to the trial court for further proceedings. This Court granted Dr. Polizzi's application for a writ of certiorari to review the court of appeal decision on his exception.

FACTS
According to Helen Sciacca's petition, on or about April 18, 1972 she entered into a contract with Dr. Polizzi under the terms of which Dr. Polizzi was to perform medical services and supply to her a means of preventing conception. In the course of the performance of this contract, the doctor recommended a "Safety Coil" a/k/a "Saf-T-Coil" intrauterine device as the method of birth control for plaintiff. Plaintiff alleges that Dr. Polizzi warranted to her that this IUD was harmless and that insertion of the device in the uterus was safe.
On April 18, 1972 at Slidell Memorial Hospital, Dr. Polizzi inserted the IUD in Ms. Sciacca's uterus. Plaintiff began to experience severe abdominal pains in January of 1974 and on February 9, 1974 doctors surgically removed the IUD. According to Ms. Sciacca, the IUD had punctured her uterus and otherwise caused damage to her reproductive organs necessitating removal *729 of both fallopian tubes and one ovary in order to save her life. As a result, plaintiff alleges she is permanently sterile.
Ms. Sciacca also alleges severe post-operative complications. Approximately six months after the February 9 surgery, she underwent emergency surgery to remedy massive infection and blockage in the small intestine and other areas of her abdomen due to a union of the small intestine and uterus in the course of the healing of the puncture wounds from the IUD. She was subsequently hospitalized after this surgery because of severe abdominal bleeding and swelling and another infection and small intestine obstruction. Plaintiff also developed a "serum sickness" or allergic reaction to some of the medication prescribed to her in the course of her treatment and her neck became swollen and her body covered with hives. Plaintiff alleges that this "serum sickness" is permanent.
At issue in this case is the prescriptive period applicable to a suit by a patient against her physician. Plaintiff contends that the allegations of her petition set out a suit in contract (for damages for the breach of that contract) and that the ten year liberative prescriptive period for personal actions provided by Civil Code art. 3544 governs her suit. Defendant takes the position that plaintiff's action is in tort and that the controlling prescriptive period for that action is the one year period applicable to quasi-offenses provided by Civil Code art. 3536.

Retroactivity of R.S. 9:5628
In 1975 the Louisiana Legislature promulgated a law specifically limiting the time period in which an action for damages for injury or death may be filed against a physician. That statute, R.S. 9:5628, provides as follows:
"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
"B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts." Added by Acts 1975, No. 808, § 1. Amended by Acts 1976, No. 214, § 1.
This Court determined in Lott v. Haley, 370 So.2d 521 (La. 1979) that this prescriptive statute, which became effective on September 12, 1975, would not be applied retroactively to the facts of that case. We recognized that, although statutes of limitation are remedial in nature and are generally applied retroactively, a retroactive application of this statute would operate to eliminate the plaintiff's vested right to sue on his preexisting January 21, 1972 cause of action since the statute did not provide a reasonable period following its enactment for the assertion of a claim within its purview. The plaintiff's action would have prescribed had the statute been applied since his suit was filed more than three years from the date of the alleged act, omission or neglect, but would not have prescribed under preexisting law.
In the instant case we find that plaintiff discovered or should have discovered the existence of facts that would entitle her to bring suit against defendant by at least February 9, 1974 when the IUD inserted by defendant was surgically removed and it was determined that there was damage to her reproductive organs. For the reasons discussed below we find that Ms. Sciacca's suit had prescribed prior to the May 13, 1976 filing date either in accordance with our interpretation of the law as it existed prior to the enactment of R.S. 9:5628 or by application of that statute. Therefore, it is unnecessary to rule on the retroactive application of the statute in this case.

*730 Prescriptive Period Applicable to Medical Malpractice Suits

The controlling prescriptive period in medical malpractice suits that are not governed by R.S. 9:5628 is determined by the nature of the plaintiff's cause of action. There is a conflict among the states as to the applicable prescriptive period, 61 Am. Jur.2d, Physicians, Surgeons, etc., § 316, p. 466, and among the appellate courts within this jurisdiction (see discussion below). The conflict results from differing opinions as to whether a suit by a patient against his physician for alleged wrongdoing is a suit in tort, which would be governed in our jurisdiction by the one year prescriptive period of Civil Code art. 3536, or a suit in contract, in which case the ten year prescriptive period of Civil Code art. 3544 would apply.
The issue was first directly addressed in the context of Louisiana law in Kozan v. Comstock, 270 F.2d 839 (5th Cir. 1959). The Fifth Circuit applied Louisiana law and concluded that absent a special warrant or contract a malpractice suit against a physician is a tort action that is subject to the tort prescriptive period. Judge Wisdom set out the following rationale for this conclusion:
"It is the nature of the duty breached that should determine whether the action is in tort or in contract. To determine the duty one must examine the patient-physician relationship. It is true that usually a consensual relationship exists and the physician agrees impliedly to treat the patient in a proper manner. Thus, a malpractice suit is inextricably bound up with the idea of breach of implied contract. However, the patient-physician relationship, and the corresponding duty that is owed, is not one that is completely dependent upon a contract theory. There are instances in which the relationship exists though there is clearly no contractual relationship between the patient and the physician. Thus, the patient may be incapable of contracting or a third person may have contracted with the physician for the treatment of the patient. Even in these instances in which no contract is present the physician still owes a duty to the patient. The duty of due care is imposed by law and is something over and above any contractual duty. Certainly, a physician could not avoid liability for negligent conduct by having contracted not to be liable for negligence. The duty is owed in all cases, and a breach of this duty constitutes a tort. On principle then, we consider a malpractice action as tortious in nature whether the duty grows out of a contractual relation or has no origin in contract. This view that malpractice suits are tortious in nature probably represents the majority view.17
"We do not mean to say that there can never be a contractual action against a physician. Generally, a physician undertakes only to utilize his best skill and judgment. When he negligently fails to do so he may have committed a tort. However, a physician may, by express contract, agree to effect a cure or warrant that a particular result will be obtained. In such instances an action in contract may lie against a physician.18 However, in the absence of a special warranty or contract, a malpractice suit against a of physician is an action in tort and is subject to the limitation period for tort actions."

* * * * * *
"17 Miller, the Contractual Liability of Physicians and Surgeons, 1953 Wash. U.L.Q. 413; Note, 32 Ind.L.J. 528 (1957); 41 Am.Jur. Physicians and Surgeons § 122; 70 C.J.S. Physicians and Surgeons § 57.
"18 If the physician has guaranteed a cure or warranted a certain result then the courts of other states are more prone to look upon an action by the patient as one in contract. See cases annotated in 74 A.L.R. 1262 and 15 A.L.R. 1031."
270 F.2d at 844-845.
This Court basically took the same approach in Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963), as had the Fifth Circuit in Kozan, and reached the same result. Writing for a unanimous Court, Chief Justice Fournet held that when a physician undertakes the treatment of a case he *731 doesn't guarantee a cure and the law does not impose an implied undertaking to cure, but only an undertaking to use ordinary skill and care. The Court noted that a physician could specifically contract to cure, and would be liable on his contract should he fail to do so. After concluding that the defendant in that case (a dentist) had made no contract warranting any particular result, the Court dismissed plaintiff's claim.
We recently reaffirmed the view that medical malpractice claims are subject to a tort prescriptive period. In Lott v. Haley, supra, in the course of discussing the retroactivity of R.S. 9:5628, we stated:
"Prior to enactment of La.R.S. 9:5628, medical malpractice claims were subject to a one-year prescriptive period, commencing to run from the date the injured party discovered or should have discovered the existence of facts that would entitle him to bring suit. La. Civil Code arts. 3536, 3537; Cartwright v. Chrysler Corp., 255 La. 598, 232 So.2d 285 (1970)." 370 So.2d at p. 523.
The First Circuit Court of Appeal in the instant case did not follow these cases but instead held that a negligent act of malpractice by a physician can constitute either an offense or a breach of contract for services entered into between the doctor and his patient. The court held that plaintiff had stated a cause of action in contract which would prescribe in ten years despite the fact that it did not find a warranty or guarantee of a specific result. The court followed its previous holding in Henson v. St. Paul Fire & Marine Ins. Co., 354 So.2d 612 (1st Cir. 1977), reh. den. 1978, writ granted 1978. This Court affirmed the result in Henson without reaching the issue of the applicable prescriptive period, 363 So.2d 711 (La. 1978), reh. den. 1978.
There is a split among the circuits of this jurisdiction on the issue of the applicable prescriptive period in medical malpractice suits. The Fourth Circuit indicated in Creighton v. Karlin, 225 So.2d 288 (4th Cir. 1969), writ den., 254 La. 842, 227 So.2d 590 (1969), that an express warranty of result was not required for an action in contract. Again, the First Circuit also subscribes to this view. The Second and Third Circuits follow the Phelps rule that a medical malpractice action is delictual in nature unless the physician warrants or promises a particular result. Ball v. Siess, 351 So.2d 845 (2nd Cir. 1977); Carroll v. Aetna Casualty & Surety Co., 363 So.2d 726 (2d Cir. 1978); Sumerall v. St. Paul Fire & Marine Insurance Co., 366 So.2d 213 (2nd Cir. 1978); Zeno v. Lincoln General Hospital, 376 So.2d 1284 (La.App. 1979), reh. den. 1979; Steel v. Aetna Life & Casualty, 304 So.2d 861 (3rd Cir. 1974), writ den., 315 So.2d 144 (La. 1975); Dauzat v. St. Paul Fire & Marine Ins. Co., 336 So.2d 540 (3rd Cir. 1976).
We hold that the better view is the one adopted in Phelps v. Donaldson, supra, and we continue to ascribe to that view. The appellate cases to the contrary are expressly overruled. Unlike engineers, mechanics and shipbuilders, a physician does not, simply by undertaking the treatment of a case, contract with a patient for a specific result. When a patient is injured by the negligence of his physician, his action against that physician is one in tort, unless the physician has contracted with the patient for a specific cure or result. The action is essentially one for injuries caused by negligence, and the statute of limitations governing negligence actions is the applicable statute regardless of the form of action by which liability is sought to be enforced. 61 Am.Jur.2d, Physicians, Surgeons, etc., § 316. See also Prosser, Law of Torts, Chapter 16, "Tort and Contract", p. 613.
Ms. Sciacca discovered or should have discovered the existence of facts that would entitle her to bring suit against defendant by February 9, 1974. On that date surgeons removed the IUD from her uterus, allegedly found that her uterus had been perforated by the IUD, determined that her reproductive organs were damaged, and removed both fallopian tubes and one ovary. Plaintiff did not file this suit until May 13, 1976. Plaintiff's tort suit is clearly prescribed either under the one year prescriptive period applicable to medical malpractice suits prior to the enactment of R.S. 9:5628, or under the terms of that statute.

*732 Suit for Breach of Contract

Plaintiff argues that defendant warranted the IUD which he inserted into her uterus, and also warranted that the insertion of the IUD was safe. She argues that she has alleged sufficient facts to bring her suit within the Phelps "warranty exception" to the general rule that medical malpractice suits are governed by tort prescription. Plaintiff strongly urges that the burden was on defendant, Dr. Polizzi, who raised an exception of prescription to her suit, to refute her allegations of warranty, and that defendant did not do so. If plaintiff's suit does fall within the warranty exception her suit will be timely since the ten year prescriptive period of Civil Code art. 3544 would be applicable.
In Phelps v. Donaldson, supra, this Court expressed its view that where a physician warranted a result to a patient, that patient may have an action against the doctor for breach of contract. In the instant case, plaintiff does not allege that Dr. Polizzi warranted a result (e.g. that the IUD would be successful in performing its function and Ms. Sciacca would not become pregnant), but warranted a devicethe IUD. Even assuming that the warrant of a device used by a physician in the course of his treatment of a patient establishes an actionable contract between the physician and the patient, our review of the hearing on defendant's exception of prescription shows that defendant met his burden of proof and refuted any warranty of the IUD.
Dr. Polizzi was the sole witness on the trial of the exception. He testified that plaintiff, a registered nurse, came into his office requesting an IUD. He did not enter into any written contract with Ms. Sciacca and he considered their relationship a normal doctor/patient relationship. Dr. Polizzi testified as follows in response to pertinent questioning at the hearing on the exception of prescription:
"Q. Did you in fact insert an intrauterine device in Ms. Sciacca?
A. Yes, I Did.
Q. In that connection, did you ever tell her that you guaranteed that this device would prevent her from being pregnant, for example?
A. No, I did not.
Q. Did you ever tell her that you guaranteed that there were noand would be no complications from the insertion of this device?
A. No, I did not.
Q. Did you guarantee to her any of your servicesthat your services would produce a given or particular result?
A. No, I did not.
Q. Did you use any words other than the word "Guarantee" as toin a nature of making assurances to Mrs. Sciacca, and if so, what did you say, if anything?
A. Not any more than we tell anyone going to surgery, that complications are possible; we didn't expect any, but there were complications that could happen."
Defendant did testify that there were "package inserts" in the packages sent to him from the manufacturer or supplier of the IUD, and that there were statements in these inserts that the IUD could be retained in the uterus indefinitely. He stipulated however that he was not sure that he gave the insert to Ms. Sciacca. There was information on the packages to the effect that the IUD could perform its single purpose, to prevent conception safely, with no untoward side effects. Dr. Polizzi stated that he doubts that he would have communicated this information to the plaintiff in this manner since he does not agree with that statement.
Plaintiff points to the following testimony in support of her position that defendant did not refute the warranties she alleged in her petition:
"Q.... Now, you have testified that you knew that Helen Sciacca was an R.N. and that she should have known all about this, or known all about IUDs, as I understood your testimony.
A. Yes. She requested the IUD. I assume she knew all about it.
*733 Q. Is it your testimony then perhaps that you did not fully discuss all of these different aspects, varying aspects, of the IUD with her?
A. I don't know what I discussed. That's been a long time.
Q. In other words, you can't remember the specific discussion at hand?
A. No, I can not."
In our view, defendant adequately refuted the warranties alleged by plaintiff. At the outset of his testimony, he specifically refuted any warranty of the IUD. He was unsure whether he had given Ms. Sciacca any package inserts from the manufacturer of the IUD. He testified that there were statements in the inserts that the IUD could be retained in the uterus indefinitely. Even assuming that Dr. Polizzi gave the insert containing this information to plaintiff and that he adopted this statement of the manufacturer as his own warranty of the product, we do not regard this language in the insert as constituting a warranty of the IUD. Dr. Polizzi further testified that he did not agree with the statement on the IUD package that the IUD could perform its single purpose, to prevent conception, safely with no untoward side effects and doubts that he would have communicated such information to his patient.
Finally, Dr. Polizzi's testimony, which is emphasized by plaintiff, that he did not remember a certain discussion with Ms. Sciacca regarding various aspects of the IUD does not negate or contradict Dr. Polizzi's specific denial of any warranties. This particular testimony can most fairly be taken to show that the doctor may not have fully discussed all of the different and varying aspects of the IUD with her, rather than an indication that he may have warranted the IUD.
For the above reasons we hold that plaintiff's suit against Dr. Polizzi constituted a tort action, i.e. a suit for damages for personal injuries resulting from alleged improper insertion of an IUD or the insertion of an unsafe device in plaintiff's uterus. Plaintiff's suit in tort has prescribed. We reverse the court of appeal ruling that a malpractice suit against a physician, even absent warranties by the physician, is a suit in contract. Although plaintiff alleged in her petition that Dr. Polizzi made certain warranties to her which might serve as the basis for a suit for breach of contract, in which case plaintiff's suit would not be prescribed, defendant adequately refuted those warranties. Consequently, we dismiss plaintiff's suit against defendant.
REVERSED.
DIXON, C. J., concurs.
DENNIS, J., dissents with reasons.