428 So.2d 915 (1983)
Mildred STEINBACH, et al.
v.
William T. BARFIELD, et al.
No. 82 CA 0528.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
Rehearing Denied April 6, 1983.
*917 Harry E. Forst, New Orleans, for Mildred Steinbach, et al. (appellant).
William S. Penick, New Orleans, for Dr. William T. Barfield and St. Paul Fire & Marine Ins. Co. (appellees).
William J. Jones, Jr., Covington, for Dr. William T. Barfield (appellee).
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit for damages alleging medical malpractice by negligence and breach of contract. After a trial, the jury returned a verdict in favor of the defendant doctor.[1] The trial judge rendered judgment in accordance with the jury's verdict. This devolutive appeal followed.

I. FACTS
On June 26, 1974, Mrs. Mildred Steinbach consulted with Dr. William Barfield, a specialist in internal medicine, practicing in Covington, Louisiana. Mrs. Steinbach gave a history of recurrent abdominal pain in the left upper quadrant, slight nausea, and weakness and pain when she urinated. Mrs. Steinbach advised Dr. Barfield that she was concerned about the possibility of having cancer. She reported normal bowel movements, no diarrhea or constipation, and no change in eating habits. Dr. Barfield conducted a physical examination and palpated Mrs. Steinbach's entire abdominal region. He found slight pain and tenderness in the left upper quadrant of the abdomen. He found no masses in the abdomen and there was no lump or pain in the right lower quadrant of the abdomen. Dr. Barfield diagnosed Mrs. Steinbach's problems as diverticulitis and an urinary tract infection. He prescribed pain and sedative medications for the diverticulitis and antibiotics for the urinary tract infection.
Mrs. Steinbach returned to see Dr. Barfield on July 1,1974, complaining of continued abdominal pain in the left upper quadrant, bowel spasms, irritation and possible fever. She again expressed her concern to Dr. Barfield about having cancer. Dr. Barfield's examination revealed pain and tenderness in the left upper quadrant. He found no masses in the abdomen and the bowel sounds were normal. Dr. Barfield determined to admit Mrs. Steinbach to the St. Tammany Parish Hospital for diagnostic testing and continued her medications.
On July 4, 1974, Mrs. Steinbach was admitted to the St. Tammany Parish Hospital and gave a history of recurrent and progressive left upper quadrant pain associated with nausea and rare vomiting spells. Mrs. Steinbach underwent extensive diagnostic testing of her body systems. On July 6, 1974, Dr. Charles Nice, a specialist in diagnostic radiology, performed a barium enema on her and rendered the following report to Dr. Barfield:

*918 "There are numerous scattered diverticula in the sigmoid colon. Remainder of the colon is probably within normal limits down to the region of the ileocecal valve. There is a large filling defect which probably represents lipomatous infiltration of the ileocecal valve. It has a little different appearance than the usual case of this condition and this may be because of the place of entrance of the ileocecal valve into the cecal region. For this reason it is suggested that the patient have another barium enema on a separate day to study this patient again.

"Impression: 1. Numerous diverticula in sigmoid colon.
2. Probable lipomatous infiltration of the ileocecal valve."

(Emphasis added).
A lipoma is a benign deposit of fatty tissue.
The diagnostic studies revealed that Mrs. Steinbach had the following problems:
(1) hiatal hernia with esophageal reflux;
(2) diverticulitis;
(3) inguinal (groin) hernia on the right side; and
(4) probable lipomatous infiltration of the ileocecal valve.
Inguinal hernias are definite risks in elderly people. A lipoma is a benign condition that is not serious. Mrs. Steinbach indicated that she wanted the inguinal hernia repaired. After consulting with Dr. Phillip Demarie, a specialist in general surgery, Dr. Barfield made a clinical judgment to postpone having another barium enema and elected to have a surgical repair of the inguinal hernia. Dr. Demarie surgically repaired the inguinal hernia on July 11, 1974. Mrs. Steinbach underwent an uneventful postoperative course, except for evidence of postoperative psychosis or toxic delirium. She was discharged from the hospital on July 17, 1974.
Mrs. Steinbach went to Dr. Barfield on July 25, 1974, and complained of continuing severe pain and irritability in the left upper quadrant. There was no significant nausea or vomiting. Her bowel movements were normal, her appetite was the same, and she suffered no weight loss. Examination revealed slight pain and tenderness in the left upper quadrant. No masses were felt in the abdomen and her bowel sounds were normal. Dr. Barfield prescribed continued medication, a diet and antacids. He advised her to return in two weeks for a followup visit.
On August 8, 1974, Mrs. Steinbach went to the St. Tammany Parish Hospital emergency room complaining of recurrent severe abdominal pain. She was given a shot for pain and told to come back the next day because there were no beds available. On August 9, 1974, she was admitted to the St. Tammany Parish Hospital. She gave a history of refractory epigastric pain, nausea, weakness, anorexia and severe lethargy. The pain was persistent, epigastric in location, and radiated sometimes into the back area. The purpose of her admission was for possible gastroscopy and consideration for possible surgery if necessary. An abdominal examination revealed moderate to severe epigastric pain and tenderness. No masses were felt in her abdomen and her bowel sounds were normal. Mrs. Steinbach was placed at bed rest and diagnostic procedures were started.
On August 10, 1974, Mrs. Steinbach and her family determined to leave the St. Tammany Parish Hospital and seek medical assistance elsewhere. On her discharge from the St. Tammany Parish Hospital, her condition was diagnosed as extreme anxiety, possible depressive syndrome, gastritis, esophagogastritis with hiatal hernia and reflux. On August 10, 1974, Mrs. Steinbach was admitted to the Meadowbrook Hospital in Belle Chase, Louisiana, under the care and supervision of Dr. Ray Evers where she underwent vitamin and nutritional therapy until September 11, 1974. She had complaints of abdominal pain and distress. The pain was located in the mid-epigastric area of the abdomen. She also complained of indigestion, heartburn, gas, distention and constipation. She also advised that she had some nausea and vomiting and ate very little. She indicated that her present illness started as an acute attack of hiatal hernia *919 about four days previously and had grown progressively worse. Her discharge summary from the Meadowbrook Hospital by Dr. John Potter indicated that she was suffering with the following problems:
(1) hiatal hernia with reflux;
(2) gastroenteritis;
(3) generalized arteriosclerosis;
(4) osteoarthritis, osteoporosis;
(5) postoperative adhesions; and
(6) anxieties, mental deficiency.
Mrs. Steinbach continued experiencing abdominal pain and was eventually given another barium enema X-ray at Meadowbrook Hospital on December 4, 1974. The results were inconclusive and a second X-ray was taken. On December 6,1974, based on the second barium enema, Dr. Claude J. Pumilia, Jr. diagnosed a space-occupying lesion within the cecal region of the colon (cancer). This area is located in the right lower quadrant of the abdomen.
Mrs. Steinbach was transferred from Meadowbrook Hospital to Ochsner Foundation Hospital and placed under the care of Dr. John Ray, a specialist in colon and rectal surgery, on December 7, 1974. Dr. Ray performed surgery on Mrs. Steinbach on December 10, 1974, and removed part of the cancer. However, due to metastasis (spread) of the cancer to the surrounding lymph nodes, not all of it could be removed by surgery. After this surgery, Mrs. Steinbach received chemotherapy treatments. Dr. Ray again performed surgery on Mrs. Steinbach on November 6, 1975, and discovered cancer in the retroperitoneal area of the abdomen. This cancer was not amenable to surgical resection because of metastasis. Dr. Ray was of the opinion that this cancer had spread from the original cancer discovered in the cecum of the colon opposite the ileocecal valve. On September 20, 1976, Mrs. Steinbach died of cancer of the colon with metastasis.

II. TESTIMONY OF MEDICAL SPECIALISTS
The plaintiffs in their petition allege the negligence of Dr. Barfield. In a medical malpractice action claiming the negligence of a physician, the burden of proof that a plaintiff must meet is defined by La.R.S. 9:2794[2] and is succinctly set forth in White v. McCool, 395 So.2d 774, 776 (La.1981), as follows:
"The pertinent statutory provision, enacted in 1975, places upon the plaintiff in a medical malpractice action the burden of proving `the degree of care ordinarily practiced by physicians and dentists within the involved medical specialty,' R.S. 9:2794(A)(1); `that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill,' R.S. 9:2794(A)(2); and `that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care plaintiff suffered injuries that would not otherwise have been incurred,' R.S. 9:2794(A)(3)...." (Footnote omitted).
The opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possess the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Guillory v. Buller, 398 So.2d 43 (La.App. 3rd Cir.1981). Dr. Barfield is a specialist in internal medicine. At the trial, plaintiffs presented Dr. Sydney Jacobs as their specialist in internal medicine. Defendant presented Dr. Sanford W. Tuthill as his specialist in internal medicine. Drs. Charles Nice, a specialist in diagnostic radiology, John Ray, a specialist in colon and rectal surgery, William Mitchell, a specialist in family practice, and Phillip Demarie, a specialist in general surgery, also testified. Appellants contend that it was error to allow Drs. William Mitchell and John Ray to testify over objection to the standard of care applicable in this case because they were not specialists in internal medicine.
La.R.S. 9:2794 requires a plaintiff to prove "the degree of care ordinarily practiced *920 by physicians ... within the involved medical specialty..."if (1) "the defendant practices in a particular specialty..." and if (2) "the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, ..." (Emphasis added). Paragraph XII of the plaintiffs' original petition alleges that Dr. Barfield was negligent in the following respects:
"Defendant, William T. Barfield, M.D. was negligent in the following particulars:
1) Failure to properly examine petitioner
2) Failure to properly treat petitioner
3) Failure to utilize known diagnostic procedures for diagnosing petitioner's cancer
4) Failure to properly inform petitioner of her physical condition and/or the possible existence of cancer
5) Misleading petitioner into believing that she could not possibly have cancer
6) All other acts of negligence which will be shown at the trial"
Paragraphs VII and XI of the plaintiffs' third supplemental and amending petition allege as follows:
VII.
"That, however, Dr. William Barfield the treating physician and Dr. Charles M. Nice negligently failed to discover Mrs. Steinbach's malignancy though there was a reasonable medical basis for doing so. The failure of these physicians to diagnose and or treat Mrs. Steinbach's maglignancy was a violation of the standards of the medical community." (Emphasis added).
XI.
"The combined negligence and failure of the defendants, Drs. Barfield, Nice, Evers and Potter to discover and/or treat Mrs. Steinbach's malignancy caused a matastisis (sic) which was irreversible and ultimately spread through her body. Mrs. Steinbach died as a direct result of the spread of this cancer."
The acts of negligence alleged do not raise issues peculiar to the medical specialty of internal medicine. Dr. Nice was sued and is a specialist in diagnostic radiology.[3] The allegations only claim a violation of the "standards of the medical community" in failing to properly diagnose and treat Mrs. Steinbach's condition.
In addition, the evidence shows that the diagnosis and treatment of cancer of the colon is not peculiar to the internal medicine specialty. Dr. Mitchell, a specialist in family practice, testified that the family practice specialty is broad and encompasses pediatrics, internal medicine, surgery, psychiatry, obstetrics and gynecology. It provides care like that of an internist. He further testified that the diagnosis of abdominal and gastrointestinal conditions, such as cancer of the colon, is included in this specialty. Dr. Ray, a specialist in colon and rectal surgery, was the treating physician at Ochsner's Foundation Hospital after the cancer was discovered. He also testified that the diagnosis of cancer in the colon is not limited to the practice of internal medicine. Since Dr. Ray performed both surgeries on Mrs. Steinbach for her cancer, it is apparent that the treatment of cancer is not limited to internal medicine.
It is true that a specialist is required to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by physicians within his medical specialty. La.R.S. 9:2794; Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978); Moran v. Dean, 416 So.2d 351 (La.App. 4th Cir.1982). Where the alleged acts of negligence raise issues peculiar to the particular medical specialty involved, then only those qualified in that specialty may offer evidence of the applicable standards. La.R.S. 9:2794(A)(1). In the instant case, the pleadings do not allege acts of medical negligence *921 peculiar to the specialty of internal medicine and the evidence shows that the diagnosis and treatment of cancer of the colon is not restricted to the internal medicine specialty. There is no evidence to show that the standards required of a specialist in internal medicine for diagnosing and treating cancer of the colon are different (higher or lower) from those required of specialists in family practice and colon and rectal surgery. Since the diagnosis and treatment of cancer of the colon is within the province of several medical specialties, those who practice in the pertinent specialties may testify concerning the standards of skill and care applicable. Accordingly, the rulings of the trial court in this regard were correct.

III. INTERROGATORY ON INFORMED CONSENT
The duty to use reasonable care and diligence imposed on a physician by La.R.S. 9:2794(A)(2) requires that he disclose to a patient all known information material and necessary to make an intelligent decision on whether or not to undergo a particular diagnostic, therapeutic or surgical procedure. That information should include a description and explanation of the proposed diagnostic, therapeutic or surgical procedure contemplated, the material risks involved and any alternatives available. LaCaze v. Collier, 416 So.2d 619 (La.App. 2nd Cir.1982). A physician is not required to advise a patient of every conceivable possibility and eventuality that may stem from his treatment, but must inform as to those that can reasonably be anticipated. Hanks v. Drs. Ranson, Swan & Burch, Ltd., 359 So.2d 1089 (La.App. 3rd Cir.1978), writ denied 360 So.2d 1178 (La.1978). If a physician fails to disclose relevant information, and the failure to disclose causes damage to the patient, actionable medical negligence results. La.R.S. 9:2794(A)(2); Percle v. St. Paul Fire and Marine Insurance Company, 349 So.2d 1289 (La.App. 1st Cir.1977), writ denied 350 So.2d 1218 (La.1977). This legal duty is sometimes referred to as the doctrine of "informed consent".
At the trial, Mrs. Steinbach contended that Dr. Barfield did not advise her of the findings of the barium enema administered to her by Dr. Nice on July 6, 1974, that she was not advised that another barium enema was suggested, that she was not advised of her alternative between taking a second barium enema or having the surgery to repair the right inguinal hernia, and that she was not advised that a filling defect of the cecum could also possibly be a cancer. The interrogatory propounded to the jury on liability was as follows:
"1. Do you find that the degree of knowledge and skill exercised by Doctor Barfield in his treatment of Mrs. Steinbach, along with the exercise of his best judgment in the application of that skill, failed to meet the standard of care of physicians specializing in the field of internal medicine?
 NO 
 (yes or no)
(If your answer to No. 1 is no, answer no further questions; if your answer to No. 1 is yes, proceed to No. 2)."
The appellant contends that this interrogatory does not put the issue of "informed consent" before the jury and that a separate interrogatory on that issue should have been given. The court gave a jury instruction on "informed consent".
The trial court has discretion to submit the issues in a case to a jury on special interrogatories or on a general verdict. La.C.C.P. arts. 1811 and 1812; Brown v. Lykes Brothers Steamship Company, Inc., 422 So.2d 213 (La.App. 4th Cir.1982); Verret v. Chotin Transportation, Inc., 356 So.2d 1067 (La.App. 3rd Cir.1978). In a case where inconsistent causes of action are alleged, if the trial judge elects to submit special interrogatories to the jury, he should propound a separate interrogatory on each cause of action. Corceller v. Brooks, 347 So.2d 274 (La.App. 4th Cir.1977), writ denied 350 So.2d 1223 (La.1977). If one cause of action is asserted (such as medical malpractice by negligence) which can be proven in more than one way (lack of skill and informed consent), it is not an abuse of *922 discretion for the trial court to submit one interrogatory to the jury on the cause of action.[4] In Babin v. St. Paul Fire and Marine Insurance Company, 385 So.2d 849 (La.App. 1st Cir.1980), writ denied 386 So.2d 358 (La.1980), the plaintiff filed a medical malpractice action pursuant to La. R.S. 9:2794 and alleged that the defendant doctor was negligent because he lacked the appropriate degree of skill and knowledge and failed to comply with the duties required of him by the doctrine of "informed consent" (just as in the instant case). The trial court submitted the following interrogatory to the jury:
"INTERROGATORIES
"1. Was the conduct of the defendant, Dr. Abramson, below the standard of care applicable to his activities?
 YES___ NO X ".
This court determined that this interrogatory was sufficient and not an abuse of discretion under the circumstances of that case.[5]
The issue that we must resolve is whether or not the interrogatory propounded to the jury in the instant case reasonably placed the issues of (1) lack of sufficient knowledge or skill and (2) failure to use reasonable care and diligence (informed consent) before the jury. After reviewing the interrogatory, we believe that the issue of lack of knowledge or skill was placed before the jury. The interrogatory, in essence, asks if "the degree of knowledge and skill exercised by Dr. Barfield" ... "failed to meet the standard of care" required. This interrogatory does not put the issue of reasonable care and diligence (informed consent) before the jury. The interrogatory does not accurately track the provisions of La. R.S. 9:2794(A)(2). As a result of this error, a jury finding of fact on the issue of "informed consent" was interdicted.
The testimony on this factual issue was conflicting. Dr. Barfield testified that he thoroughly advised Mrs. Steinbach of the results of the diagnostic testing done and of the alternatives available to her. Mrs. Steinbach, her husband and her daughter testified that Dr. Barfield did not. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, ordinarily a case will be remanded for a new trial. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980). However, even if a mistake of law forecloses a jury verdict on a pertinent finding of fact, if the record is otherwise complete, an appellate court should, if it can, render a judgment on the record. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
La.R.S. 9:2794(A)(3) requires that a plaintiff in a medical malpractice action must prove that the injuries that he suffered would not have otherwise been incurred, but for the lack of knowledge or skill of the physician, or his failure to exercise reasonable care and diligence, along with his best judgment in the application of that skill. We have carefully reviewed the record in this case and find no evidence to prove that Mrs. Steinbach had cancer during the period of time that she was treated by Dr. Barfield between June 26, 1974, and August 10, 1974. There is no evidence to show that if a second barium enema would have been performed in July of 1974, that it would have resulted in a diagnosis of cancer. There is no evidence in the record to show that if cancer would have been diagnosed in July of 1974, that it could have been successfully treated. Thus, the evidence in the record presently before us fails to prove that any alleged act of medical malpractice was a cause in fact of the damages *923 that appellant claims. Accordingly, the result reached in the trial court on liability was correct.

IV. CONTRACT FOR MEDICAL TREATMENT
The plaintiff alleged in her petition that Dr. Barfield assured her that she did not have cancer in any part of her body, that he guaranteed that she was discharged in good physical health, and that he thereby contracted with her that she would not be discharged with evidence of cancer. She alleges that the trial court committed error by failing to submit a special interrogatory to the jury on whether or not there was a contract entered into between her and Dr. Barfield and whether that contract had been breached. Appellant asserts that Dr. Barfield guaranteed a certain diagnostic precision and that by giving assurances that he would rule out cancer created an explicit contractual agreement with Mrs. Steinbach. The appellant cites as authority for this position Creighton v. Karlin, 225 So.2d 288 (La.App. 4th Cir.1969), application denied 227 So.2d 590 (La.1969); Barrios v. Sara Mayo Hospital, 264 So.2d 792 (La.App. 4th Cir.1972) and Henson v. St. Paul Fire and Marine Insurance Company, 354 So.2d 612 (La.App. 1st Cir.1977), reversed on other grounds 363 So.2d 711 (La.1978).
In Sciacca v. Polizzi, 403 So.2d 728 (La. 1981), the Louisiana Supreme Court held that when a patient is injured by the negligence of his physician, the patient's action against the physician is one in tort, unless the physician has contracted with the patient for a specific cure or result. The Supreme Court of Louisiana in that case overruled the Henson and Creighton holdings, and overruled the holding in Barrios by implication. The appellant concedes in brief that Dr. Barfield did not guarantee any cure or result. The evidence of record supports this position. Dr. Barfield's actions cannot be interpreted as being a guarantee that Mrs. Steinbach did not have cancer. He did what any other doctor does in attempting to diagnose a patient's condition. He ran diagnostic tests, he interpreted the results of those tests based on his skill and experience, and attempted to discover the basis of his patient's problems.
There is no basis in law and no fact in the record to support the theory of contract asserted by the appellant. A trial court is not required to submit an instruction or special interrogatory to a jury that is not supported by law or fact. Rogers v. Brown, 416 So.2d 624 (La.App. 2nd Cir.1982), writ denied 422 So.2d 153 (La.1982).

V. CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and is affirmed at the appellants' costs.
AFFIRMED.

APPENDIX 1
La.R.S. 9:2794 provides:
"A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., or a dentist licensed under R.S. 37:751 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular speciality and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

*924 "B. Any party to the action will have the right to subpoena any physician or dentist either for a deposition and/or testimony for trial to establish the degree of knowledge or skill possessed or degree of care ordinarily exercised as described above without obtaining the consent of the physician or dentist who is going to be subpoenaed. The fee of the physician or dentist called for deposition and/or testimony under this Section will be set by the court.
"C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician or dentist. The jury shall be further instructed that injury alone does not raise a presumption of the physician's or dentist's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable."
NOTES
[1] Although this suit commenced with several doctors and hospitals as parties defendant, the only defendant at the trial was Dr. William T. Barfield.
[2] See Appendix 1 for the entirety of La.R.S. 9:2794.
[3] The record does not reflect what specialty, if any, Drs. Evers and Potter practiced. They were dismissed from the suit prior to trial.
[4] We believe it to be a better procedure to submit a separate interrogatory on each theory supporting a cause of action. However, it appears that submitting a "general" special interrogatory on a cause of action is within a trial judge's discretion.
[5] Where such a "general" special interrogatory is submitted, it is presumed that the jury resolved all conflicts in testimony in favor of the prevailing party. Steele v. St. Paul Fire & Marine Insurance Company, 371 So.2d 843 (La. App. 3rd Cir.1979), writ denied 374 So.2d 658 (La.1979); cf: Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir.1982), writ denied 422 So.2d 423 (La.1982).