liLABORDE, Judge.
Decedent, Mrs. Margie Mae Pickney, died after taking medicine administered by her dentist, defendant Dale Dupuis, in preparation for treatment of an abscessed tooth. A jury found no liability on the part of defendant. We affirm.
FACTS
|2On May 12, 1988, decedent, Margie Mae Pickney, was being treated by Dr. Dale Du-puis for an abscessed tooth. To prepare his patient, Dr. Dupuis gave Mrs. Pickney an injection of mepivaeaine to numb the area of the mouth surrounding the affected tooth. After the injection, he gave her four penicillin tablets and two probenecid tablets, which she ingested orally.
Within a few minutes, Dr. Dupuis found his patient standing in the hall. She was scratching her arm and appeared to be hot. Dr. Dupuis returned her to the dental chair and told her to breathe deeply. About five minutes later, her blood pressure dropped sharply and she stopped breathing. Dr. Du-puis placed her on the floor and administered CPR while waiting for previously summoned paramedics to arrive.
The Acadian Ambulance Service eventually arrived 40 to 45 minutes after receiving the call. They transported .Mrs. Pickney to Opelousas General Hospital. She died two days later, never having regained consciousness. Her autopsy indicated that she died from an anaphylactic reaction to penicillin.
Procedural History
Decedent’s spouse, Albert Pickney, and her children, Earl Richard, Angela Pickney, Ronald Richard, Tracey Richard and Curley *720 Richard, filed suit against defendant for wrongful death and medical malpractice.
After a jury trial, May 11-18, 1993, the jury rendered judgment in favor of defendant. On June 4, 1993, plaintiffs filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for New Trial, which was subsequently denied by the trial court. Plaintiffs appeal, alleging six assignments of error:
1. The jury erred in finding that the defendant did not deviate from the accepted standard of medical care in failing to have an oxygen bottle and/or ^failing to administer oxygen.
2. The jury erred in failing to find that defendant deviated from the accepted standard of medical care in failing to treat plaintiff for allergic reaction, shock, cardiopulmonary distress and respiratory distress.
3. The jury erred in failing to find that defendant deviated from the accepted standard of medical care in becoming “baffled” and “not knowing what to do.”
4.- The jury erred in failing to find that defendant deviated from the accepted standard of medical care in not completing his office chart and medical history prior to oral surgery.
5. The jury erred in accepting the testimony of defendant.
6. The trial judge erred in allowing the defense to introduce the depositions of Dr. Williams and Dr. Aswell.
LAW
Standard of Review
After thoroughly reviewing the record, a court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
LSA-R.S. 9:2794(A) imposes upon the plaintiff in a medical malpractice action the burden of proving:
(1)The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the Ufailure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
See, Moore v. Curry, 577 So.2d 824 (La.App. 2 Cir.), writ denied, 580 So.2d 674 (La.1991).
The opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possess the requisite degree of knowledge or skill or failed to exercise reasonable care and diligence. Steinbaeh v. Barfield, 428 So.2d 915 (La.App. 1 Cir.), writ denied, 435 So.2d 431 (La.1983).
Assigned Errors
In their first four assigned errors, plaintiffs allege that the jury erred in several of its findings of fact which supported its conclusion that Dr. Dupuis did not deviate from the standard of care for dentists in the community.
Plaintiffs first allege that defendant deviated from the accepted standard of medical care in failing to have an oxygen bottle and in failing to administer oxygen to decedent. Plaintiffs contend that Dr. James Robert, a member of the medical review panel, testified that it was the standard of care of all similarly situated dentists to have an oxygen bottle as part of a dental emergency kit, *721 and it was a deviation from the expected standard to not have an oxygen bottle as part of this kit. However, defendant contends that it was not a deviation from the standard of care to fail to administer pure oxygen from a bottle, but rather to use CPR and mouth to mouth resuscitation to revive Mrs. Pickney.
Dr. Guy Doll and Dr. Gerald Chachere, both members of the medical review panel, stated that they believed it was a deviation of the standard of care to fail to possess and administer oxygen. However, these doctors also stated that Dr. Dupuis acted properly under the circumstances by administering mouth to mouth ^resuscitation and basic CPR.
Dr. Clay Duos testified that although he had an oxygen bottle in his office, he did not know whether or not the failure to have an oxygen bottle was a deviation from the standard of care. Further, he stated that defendant’s administration of CPR and mouth to mouth resuscitation was an acceptable method of delivering air and oxygen to his patient during her emergency. Dr. Robert also agreed that this was appropriate treatment; he further stated that an oxygen bottle may not have been effective since the patient was not breathing on her own, and that, therefore, mouth to mouth and CPR were more effective to force the air into her lungs to attempt to restart her lungs. The jury found that Dr. Dupuis’ administration of mouth to mouth resuscitation and CPR instead of the use of an oxygen bottle was not a violation of the standard of care expected of dentists in the community. We find no clear error in this regard.
In their second assigned error, plaintiffs claim that Dr. Dupuis failed to meet his standard of care because he did not administer epinephrine to Mrs. Pickney when she was obviously suffering from an anaphylactic reaction. However, this testimony was countered by several experts who testified that unless a doctor is positive of a diagnosis, epinephrine should not be administered. Dr. Chachere testified that epinephrine is contraindicated unless the treating dentist is positive of what the diagnosis is, as a dentist could make the situation worse by injecting medication if he is unsure of the diagnosis.
His opinion was supported by Dr. Duos, who testified that a dentist should not administer anything but basic life support if the patient does not have obvious signs of an allergic reaction. Similarly, Dr. Robert testified that he would not give epinephrine to a patient unless he was sure the patient was having an anaphylactic | (¡reaction. We are unable to say the jury clearly erred in accepting the opinions of defendants’ experts. The record demonstrates that Dr. Dupuis was unsure of Mrs. Pickney’s condition because she did not demonstrate the well-known symptoms of an anaphylactic reaction. The recognized symptoms of an anaphylactic reaction, according to Handbook of Medical Emergencies in the Dental Office by Stanley Malamed, include: intense itching, flushing, giant hives over face and chest; nausea and vomiting; conjunctivitis and vasomotor rhinitis (increased mucous secretion); hair standing on end (piloerection); abdominal cramps; diarrhea; fecal and urinary incontinence; feeling of substernal tightness; cough, wheezing; dyspnea; cyanosis; laryngeal edema; pallor; lightheadedness; palpitation; tachycardia; hypotension; cardiac dysrhyth-mia; loss of consciousness; cardiac arrest. Dr. Dupuis testified that Mrs. Pickney only exhibited hypotension (drop in blood pressure), loss of consciousness and cardiac arrest. Dr. Dupuis further stated that these symptoms suggested several diagnoses, and he only administered basic CPR and did not inject epinephrine, because he was unsure of the patient’s exact condition.
Dr. Dupuis’ evaluation of the patient as to the ambiguous nature of her symptoms was confirmed by others who examined her. Andrea Lastrapes, Dr. Dupuis’ dental assistant, testified that she never saw Mrs. Pickney exhibiting hives, whelps, redness on her skin or blisters. Glen Broussard, the paramedic who treated Mrs. Pickney at Dr. Dupuis’ office, testified that he did not notice any hives or whelps on Mrs. Pickney’s face or chest. He further stated that he did not find the patient to be flushed, or to be suffering from whelps or redness. He did not observe any swelling in her arms or stomach. He did *722 notice that the patient exhibited cyanosis of the lips and nails (discoloration due to a lack of oxygen) and |7was moist.
Dr. Rosemary St. Clergy, the emergency room doctor at Opelousas General, testified that Mrs. Pickney didn’t exhibit any rashes, redness, wheals, whelps on her skin or laryngeal edema. She explained that wheals, whelps and hives are all small circular lesions that develop as a result of an allergy, as in a bee sting and that laryngeal edema is a swelling of the throat and vocal chords. It was her opinion that decedent did not have an anaphylactic reaction to the penicillin, as medication taken orally takes time to be ingested into the system and take effect. Similarly, Dr. Aswell, another physician who treated Mrs. Pickney at Opelousas General, did not observe any rashes or hives on the skin, any swelling, or wheal and flare reactions in the mouth, all of which are typical of an anaphylactic reaction. Finally, Drs. Doll, Duos and Robert all agreed that a patient who exhibits the symptoms of loss of consciousness, cardiac arrest, and drop in blood pressure would not necessarily indicate an anaphylactic reaction.
In their third assigned error, plaintiffs allege that defendant deviated from the standard of care in becoming “baffled” and “not knowing what to do.” A review of Dr. Dupuis’ testimony reveals that he was confused by what was causing Mrs. Pickney’s condition. Apparently, he was not the only one.
However, there was sufficient evidence in the record that the jury could have concluded that Dr. Dupuis’ inability to diagnose the cause of Mrs. Pickney’s condition was not a breach of the applicable standard of care. Dr. Aswell, who treated Mrs. Pickney at Opelousas General Hospital, stated that he did not believe that she suffered from an anaphylactic reaction. He opined that she had cardiac arrhythmia, but was unsure exactly what caused it. Further, Dr. St. Clergy, the emergency room physician, stated that she also did not believe that the patient Igsuffered an anaphylactic reaction, but rather that she had a massive myocardial infarction.
In their fourth assigned error, plaintiffs claim that defendant breached the accepted standard of medical care in not completing his office chart and medical history prior to treating decedent.
Dr. Dupuis testified that before treating any patient, he first obtains a full and complete medical history from that patient. He stated that each time Mrs. Pickney needed a dental procedure, he thoroughly reviewed Mrs. Pickney’s medical history with her verbally. Defendant further emphasized that prior to treating Mrs. Pickney on May 12, 1988, he asked her if she was allergic to any medications and whether or not she could take penicillin. She told him that she could take penicillin. He also discussed her blood pressure condition. Further, defendant stated that his office placed a red tag on a patient’s chart to signify the patient’s allergies or other significant medical history. He testified that her chart had no red tag on it when he referred to it prior to the procedure, indicating that the patient had not related any allergies to medication. Andrea Las-trapes, defendant’s dental assistant, supported this testimony, stating that Dr. Du-puis had asked about her blood pressure and whether she was allergic to any medication, specifically penicillin, and the patient responded that she was not allergic to any medication. Dr. St. Clergy further testified that Mrs. Piekney’s family informed her that Mrs. Pickney had no known allergies.
In the present case, the jury found that plaintiffs satisfied their burden of proving the standard of care required of dentists practicing in Opelousas at the time of the incident, but did not prove that defendant failed to conform to that standard of care. Although originally Drs. Chachere, Robert and Doll stated that 19the applicable standard of care required that a patient’s medical history be written down, each subsequently stated that obtaining a medical history verbally would have satisfied the requisite standard of care. Accordingly, we find no legal basis for upsetting that conclusion.
In each of the factual findings questioned by the plaintiffs, the jury assessed the credibility of the witnesses, both expert and lay, in making its determination. Where *723 there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though an appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra. This rule also applies to credibility determinations as to expert witnesses. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990). In the present case, after reviewing the record, we cannot say that the finder of fact committed any manifest error when it concluded that Dr. Dupuis did not deviate from the standard of care required of him.
Assignment of Error Number Five
In their fifth assigned error, plaintiffs contend that the jury erred in accepting the testimony of defendant. However, we find no merit to this argument.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
⅜ ⅜ ⅝ ⅜ ⅜ #
But where such factors are not present, and a factfinder’s finding is | ipbased on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989) (citations omitted). In the present case, the jury apparently believed the testimony of Dr. Dupuis concerning his treatment of decedent. He testified that before he administered any medication to decedent, he questioned her as to whether she had any allergies to medications, to which she responded in the negative. Further, as to the propriety of the emergency measures used by Dr. Dupuis after administering the medication, defendant testified that decedent did not demonstrate any recognizable symptoms of an allergic reaction. In fact, Dr. Dupuis stated that he considered many possible diagnoses but could not determine the exact nature of decedent’s condition so as to administer a more effective treatment. Moreover, the record clearly establishes that the jury not only relied on the testimony of Dr. Dupuis but on that of other witnesses, as discussed above. Therefore, we find no merit to this argument.
Assignment of Error Number Six
In their final assigned error, plaintiffs object to the introduction of the testimony of two doctors’ depositions because plaintiffs had different counsel at the time. Plaintiffs claim that since their present counsel did not have a chance to cross-examine these witnesses, they would be unduly prejudiced by the introduction of these depositions. However, we find this contention to be without merit. If plaintiffs’ previous attorney provided inadequate services, their recourse is against the attorney in a malpractice action. See Allen v. IMTC, Inc., 567 So.2d 1155 (La.App. 3 Cir.1990).
Further, they contend that defendant did not give notice under C.C.P. art. 1450, which provides in part as follows:
| n(5) However, any party may use the deposition of an expert witness for any purpose upon notice to all counsel of record, any one of whom shall have the right within ten days to object to the deposition, thereby requiring the live testimony of an expert. The objecting counsel of record shall pay in advance the fee, reasonable expenses, and actual costs of such expert witness associated with such live testimony. The fees, expenses, and costs specified in this Subparagraph shall be subject to the approval of the court. The provisions of this Subparagraph do not supersede Subparagraph (A)(3) nor Code of Evi *724 dence Article 804(A). However, the court may permit the use of the expert’s deposition, notwithstanding the objection of counsel to the use of that deposition, if the court finds that, under the circumstances, justice so requires.
Plaintiffs timely objected to the use of these depositions. However, art. 1450 expressly provides that the court may permit the use of the expert’s deposition if justice so requires, in spite of objection of counsel. An appellate court must place great weight on a trial court’s ruling of relevancy of evidence and should not reverse such a ruling in the absence of a clear abuse of discretion. Krampe v. Krampe, 625 So.2d 383 (La.App. 3 Cir.1993), writ denied, 630 So.2d 781 (La.1994). Therefore, we find no abuse of discretion by the trial judge in allowing the introduction of these two depositions at trial.
DECREE
The judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
THIBODEAUX, J., dissents for the reasons assigned by KNOLL, J.