655 So.2d 493 (1995)
James RICKER, Jr.
v.
Aynaud F. HEBERT, M.D., and Slidell Memorial Hospital, a/k/a St. Tammany Hospital District # 2.
No. 94 CA 1743.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*494 Gregory F. Gambel, New Orleans, for plaintiff-appellee.
C. William Bradley, Jr., New Orleans, for defendant-appellant.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
James Ricker, Jr. (plaintiff), injured his teeth and jaw in an automobile accident on April 26, 1987. He was admitted to Slidell Memorial Hospital and Medical Center (SMH)[1] for emergency treatment. Dr. Aynaud F. Hebert (defendant), an otolaryngologist (ear, nose, and throat specialist, or ENT), was called by SMH to treat plaintiff and performed surgery on plaintiff. After plaintiff's discharge from SMH, the surgery was completely redone by a maxillofacial (oral) surgeon, Dr. Carroll L. Wood, III, and his partner, Dr. James A. Loyola.[2]
Plaintiff sued defendant and SMH, contending defendant negligently performed the surgery and SMH negligently allowed defendant to operate outside his specialty. A medical review panel composed of three ENT's found the evidence submitted to it did not support the conclusion that either defendant or SMH failed to meet the applicable standard of care as charged in the complaint. Plaintiff then proceeded to trial. The case was tried to a judge after plaintiff stipulated his damages were less than $20,000.00. The trial court found defendant breached the standard of care required of ENT's and awarded plaintiff $14,000.00 in general damages and $5,960.00 in medical expenses. Defendant appeals.[3]
Defendant contends the trial court erred in allowing the testimony of two oral surgeons to establish the standard of care *495 applicable to an ENT. Plaintiff did not call an ENT but relied on the testimony of Wood and Loyola. Defendant contends that only a medical doctor can testify as to the standard of care required of another medical doctor.
Louisiana Revised Statute 9:2794(A) sets forth the burden of proof in a medical malpractice action:
In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., ... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
(Emphasis added.)
Our courts have held that where medical disciplines overlap, it is appropriate to allow a specialist in one field to give expert testimony as to the standard of care applicable to performing a particular procedure common to both disciplines. See, e.g., Leyva v. Iberia General Hospital, 94-0795 (La. 10/17/94), 643 So.2d 1236 (obstetrician/gynecologist testified as to standard required of general practitioner in performing tubal litigation); Soteropulos v. Schmidt, 556 So.2d 276 (La.App. 4th Cir.1990) (orthopedist testified as to standard of care required of vascular surgeon in smoothing edges of tibia during amputation); Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.), writ denied, 435 So.2d 431 (La.1983) (specialists in colon and rectal cancer, family practice, and diagnostic radiology testified as to standard of care required of specialist in internal medicine in diagnosing colon cancer); Fairchild v. Brian, 354 So.2d 675 (La.App. 1st Cir.1977), writ denied, 356 So.2d 437 (La.1978) (ophthalmologists testified as to standard of care required of optometrist in diagnosing eye disease). In determining whether testimony regarding the standard of care will be limited under Revised Statute 9:2794(A) to a specialist who practices the same specialty as the defendant, the operative statutory phrase is "where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved." Where the procedure alleged to be negligently performed is one that is not limited to a particular specialty, and where there is no showing that the standard of care is different for different medical disciplines, an expert with knowledge of the requisite procedure should be allowed to testify regarding the standard of care for performing that procedure. Steinbach, 428 So.2d at 920-921. Of course, the party offering such an expert must show the witness's expertise, skill, and training in the procedure.[4]
In this case, Loyola, plaintiff's expert, testified there is a standard procedure for treatment of a fractured mandible which is used by both oral surgeons and ENT's. Wood testified ENT's and oral surgeons perform the same procedure, although oral surgeons treat at least 95% of mandibular fractures. Defendant's expert, Dr. John A. White, an ENT who was a member of the medical review panel in this case, testified the panel found the technique used by defendant was *496 the same as that used by Wood. This testimony shows that treatment of a mandibular fracture is not "peculiar" to the specialty of otolaryngology. Thus, we find that testimony of an ENT regarding the standard of care was not necessary in this case.
Defendant contends, however, that even if ENT's and oral surgeons perform the same treatment for the same condition, an oral surgeon cannot offer expert testimony against a medical doctor. We disagree. When the same treatment for the same condition is performed by members of more than one health care discipline, an expert health care professional having training, knowledge, and experience in performing the procedure in question may testify regarding the standard of care for performing the procedure. There was no evidence that the standard of care required of an oral surgeon was either higher or lower than that required of an ENT. Thus, either an oral surgeon or an ENT could testify as to the standard of care in treating a fractured mandible.
Defendant contends that even if Wood and Loyola were properly permitted to testify, plaintiff failed to carry his burden of proof by showing defendant failed to meet the national standard of care required of ENT's. Wood and Loyola were not asked specifically to state the standard of care required of ENT's in treating mandibular fractures. Both explained in detail, however, how plaintiff's fracture should have been treated by any health care professional performing that procedure.
Furthermore, while Wood and Loyola were not asked the precise question of whether defendant violated the standard of care required of ENT's in treating plaintiff's fracture[5], they testified in detail how, in their opinion, defendant performed the procedure improperly. Wood testified as follows on cross-examination:
Q. Doctor, isn't it true that despite the best efforts of a surgeon to repair a mandibular fracture of this sort that complications of the type you saw when you finally did see Mr. Ricker can and do occur? Even in spite of the best care?
A. No. Definitely not in spite of the best care, not even in spite of
Q. How about in spite of reasonable care?
A. No.
Q. You think no?
A. Shakes head negatively.
We can certainly infer from this testimony that in Wood's opinion, defendant failed to exercise the standard of care required of a health care professional treating a mandibular fracture, whether locally or nationwide.
Defendant in brief attacks the credibility of Wood and Loyola on various grounds and especially on their alleged bias against ENT's because of a "turf war" between ENT's and oral surgeons. Defendant points out that the three ENT's on the medical review panel found no breach of the standard of care. Where expert opinions conflict concerning compliance with the applicable standard of care, the trial court's conclusions on the issue are granted great deference and will not be disturbed in the absence of manifest error. Iseah v. E.A. Conway Memorial Hosp., 591 So.2d 767 (La.App. 2d Cir.1991), writ denied, 595 So.2d 657 (La.1992).
The trial court found Wood and Loyola credible and their testimony persuasive. We also note that the conclusions of the medical review panel were based on the evidence submitted to it, which did not include the post-surgery x-rays taken by Wood. Wood and Loyola testified those x-rays showed the wire used by defendant to repair plaintiff's jaw had broken, some wires were loose, the arch bars were placed improperly, and plaintiff's teeth were wired into such malocclusion he looked as if he had no chin.[6] We find no *497 manifest error in the trial court's finding that defendant breached the standard of care.
Defendant contends the general damages awarded by the trial court are excessive. Wood and Loyola testified defendant's breach caused plaintiff to suffer unnecessary pain. The accident occurred on a Sunday evening, April 26. Defendant performed surgery that night, concluding in the early morning hours of April 27. Plaintiff was discharged from SMH the following morning, April 28. Defendant realized the wires and arch bars were loose and asked plaintiff to come to his office across the street from the hospital so he could tighten the wires. Defendant testified regarding this procedure: "[I]t did hurt him and I did try to inject around the areas to numb things up a bit and we stopped and offered to give him something for pain and he said he wanted to push on and try to get it done. His father sat there giving him support." Plaintiff's father testified he was forced to hold plaintiff's head in a headlock and hold his hands at the same time so he could withstand the pain. Plaintiff testified the pain during the tightening procedure was intense and "quite horrible."
Defendant recommended plaintiff obtain further treatment at Charity Hospital. He suggested the use of a Joe Hall Morris biphasic device, an external device which is secured by four metal pins. Instead of taking plaintiff to Charity, plaintiff's father called Wood. Wood and Loyola examined plaintiff in his office on April 29 and found the external device was not indicated.[7] Loyola testified the area of plaintiff's fracture was "exquisitely painful." On April 30 Wood admitted plaintiff to East Jefferson Hospital, where on Friday, May 1, he and Loyola rewired plaintiff's jaw. They also repaired a small fracture which Wood discovered during the procedure which did not appear on the x-rays. Plaintiff was discharged from East Jefferson on May 2, and his recovery was uneventful.
Loyola testified plaintiff was in an unnecessary amount of pain from the time of defendant's surgery until the repair by Wood and Loyola, a period of over four days. Plaintiff's recovery period was also delayed by that length of time, and the scar under his chin is worse than it would have been had it not been reopened for the second surgery.[8] Wood testified that although plaintiff would have suffered pain from the automobile accident even if the surgery had been done properly the first time, his pain was exacerbated by defendant's surgery.
The trial court's discretion in awarding damages is great, and even vast, and should rarely be disturbed by an appellate court. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert den., ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Plaintiff suffered intense pain when defendant attempted to correct his mistake, had four days of exacerbation of the pain in his fractured jaw, worried needlessly about having an external device pinned to his jaw, underwent surgery under general anesthesia which would have been unnecessary had defendant performed the procedure properly the first time, and spent three extra days in the hospital. In light of these facts, we find no abuse of the trial court's discretion in the award of $14,000.00 in general damages to plaintiff.
Finally, defendant contends the trial court erred in awarding past medical expenses to plaintiff because there is no proof plaintiff is financially responsible for those bills, citing Jones v. Rapides General Hospital, 598 So.2d 619 (La.App. 3d Cir.1992). However, Jones is completely inapplicable to *498 the facts of this case. Jones involved a plaintiff who was treated at a state charity hospital and who failed to introduce any evidence of medical expenses. In this case, plaintiff introduced copies of his medical bills, and the parties stipulated at the beginning of trial to those bills, which totalled $8,926.03.
Defendant argued that plaintiff's parents paid his medical bills and should have sued to recover the sums paid, but there is no evidence in the record to support that contention. Plaintiff is a major. He testified some of the expenses were covered by insurance, but defendant cannot receive any benefit from that because the insurance is a collateral source. There is no evidence that plaintiff is not ultimately responsible for his own medical bills. The trial court was not manifestly erroneous in awarding plaintiff past medical expenses.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to defendant, Aynaud F. Hebert.
AFFIRMED.
NOTES
[1] SMH is incorporated as St. Tammany Hospital Service District No. 2 and does business as Slidell Memorial Hospital and Medical Center. It was incorrectly listed in the petition as "Slidell Memorial Hospital a/k/a St. Tammany Hospital District No. 2."
[2] By the time of trial, Wood had retired and Loyola was in solo private practice.
[3] After judgment but before the appeal was taken plaintiff voluntarily dismissed SMH from the lawsuit.
[4] In Boudreaux v. Panger, 481 So.2d 1382 (La. App. 5th Cir.1986), aff'd, 490 So.2d 1083 (La. 1986), plaintiff offered the testimony of two orthopedists regarding the standard of care required of a chiropractor in manipulating vertebrae. The court found plaintiff failed to prove his case because no licensed chiropractor testified and neither orthopedist "admitted to any expertise or skill in manipulation of the vertebrae."
[5] Plaintiff's counsel asked Wood whether defendant breached the standard of care expected of a physician performing surgery at Slidell Memorial Hospital. Wood was not qualified to answer that particular question as he did not practice at SMH and had no knowledge of the standard of physicians performing surgery there.
[6] Wood and Loyola also testified defendant breached the standard of care by failing to offer plaintiff the choice of an oral surgeon and by discarding a segment of three teeth and attached bone which they would have tried to re-implant. Defendant testified he offered to call an oral surgeon, but plaintiff and his parents declined; plaintiff and his father deny such an offer was made. The trial court found defendant did not make the offer.

Defendant also testified the teeth and bone were not viable, but Loyola testified that in the hundreds, and maybe thousands, of multiple facial trauma cases he has treated, he has never thrown away a large segment of teeth and bone without first attempting re-implantation.
[7] Wood and Loyola testified the device is used at Charity and works well but is indicated only for patients who cannot perform their own oral hygiene, or are drug addicts or alcoholics. Loyola testified the device "looks like hell," is a "social stigma," and often leaves "four pretty ugly scars."
[8] Loyola testified if he had done the original fracture reduction, he would have reduced the fracture without making an incision in plaintiff's chin.