707 So.2d 463 (1998)
Patricia Dwyers KIPPERS, et al.
v.
James R. CORCORAN, M.D., and East Jefferson General Hospital Service District No. 2 d/b/a East Jefferson General Hospital.
No. 97-CA-870.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 1998.
*464 Edward J. Rice, Jr., Arthur F. Hickman, Jr., Adams and Reese, New Orleans, for Appellant/Defendant James R. Corcoran, M.D.
Orrill, Shearman & Cordell, L.L.C., R. Ray Orrill, Jr., Robert F. Shearman, Leslie A. Cordell, Lyn M. Curlin, Kevin D. Shearman, New Orleans, for Appellee/Plaintiff Patricia Dwyer Kippers.
Before BOWES, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, James Corcoran, M.D., appeals from a medical malpractice judgment in favor of plaintiff, Patricia Kippers. We affirm.
On March 31, 1992, plaintiff was admitted to East Jefferson General Hospital where she underwent a procedure to remove her gallbladder. The procedure, laparoscopic cholecystectomy, was not in use until the early 1990's. Following the procedure, plaintiff suffered from severe pain, nausea, burning in the abdomen, shortness of breath and sleeplessness, but was assured by doctors and nurses that these were normal post-operative effects. She was discharged on April 1, 1992. Plaintiff, however, continued to have problems, including severe gas symptoms and vomiting of bile. She was unable to work, but continued to report these problems to Dr. Corcoran's office. On April 9, 1992, a doctor in the office prescribed suppositories. When the medication did not help, she was instructed to go to the emergency room at East Jefferson General Hospital where she was immediately admitted. Dr. Corcoran stopped by to see her and, without examining her, said that she may have a virus. Tests were conducted which ultimately showed that plaintiff's right hepatic duct was lacerated, allowing bile to leak into her abdomen and surrounding areas, resulting in the severe pain, peritonitis, scarring and other related problems. Plaintiff subsequently underwent three more surgical procedures to correct the problem. She also suffered a compression of the lungs due to the bile leakage and had to undergo oxygen and breathing treatments.
Plaintiff filed suit on November 28, 1994 against defendant.[1] A judge trial was held on December 4 and 5, 1995. On December 8, 1995, a judgment was rendered in favor of defendant. Plaintiff filed a Motion for New Trial. It was granted for reargument only on November 15, 1996. On March 25, 1997, the trial judge reversed his original judgment and rendered judgment for plaintiff in the amount of $35,000 for general damages and $28,217.88 for special damages. In reasons for judgment, the trial judge found defendant admitted that it would be negligence to injure the right hepatic duct and that the preponderance of the evidence showed that the right hepatic duct was injured during the procedure.
On appeal, defendant asserts that the trial judge erred in permitting Dr. William Walker to testify because he was not qualified to testify in this area. Defendant next argues that there was no good cause for the trial judge to grant the new trial. Third, defendant contends that the trial judge was manifestly erroneous in finding that defendant testified that if the right hepatic duct had been injured, then he would have committed malpractice.
*465 Defendant first argues that the trial judge erred in permitting Dr. Walker to testify because, although he had been trained in general surgery, thoracic surgery and vascular surgery, the last sixteen years he had been practicing as a cardiac surgeon. His only experience with general surgery during that time was as an associate professor, wherein he was not actually the primary surgeon for any general surgery cases. At the time of trial, Dr. Walker had not been associated with any university for over one year. Furthermore, Dr. Walker testified that he had never performed this procedure, nor had he ever observed it live. Over the five years preceding trial, Dr. Walker had never been the primary surgeon even on an open gallbladder removal (by traditional surgery). In fact, he had not performed any surgery within the fifteen months prior to trial. Defendant contends that the doctor's primary activity during that time was testifying or reviewing medical-legal cases.
Plaintiff asserts that the trial judge did not err in allowing Dr. Walker's testimony. Plaintiff claims that Dr. Walker was qualified to testify in this area and that the trial judge was able to give his testimony whatever weight he thought that it deserved. Further, the trial judge did not indicate that he relied on Dr. Walker's testimony. Instead, he repeatedly indicated that the testimony of defendant compelled him to render judgment in plaintiff's favor.
The record shows that Dr. Walker is a Board Certified General Surgeon, with a history of performing general surgery. He has taught general surgery, attends medical meetings every year and is on the staff of six hospitals as a general, vascular and thoracic surgeon. He is competent to testify about the standard of care for general surgeons. Further, the doctor established that he had knowledge of this particular procedure through education, training and experience. He has performed many abdominal cholecystectomies (traditional surgery) and is familiar with the anatomy surrounding the gallbladder and with the surgical removal of the gallbladder. He keeps abreast of the risks associated with the laparoscopic cholecystectomies by reading the medical literature, by attending conferences yearly where they are discussed and papers presented, and by watching numerous videos of the procedure being performed. The doctor has taught students and residents about the risks and is in the process of preparing a scientific paper on the risks of the laparoscopic procedure versus the abdominal one. He noted that the laparoscopic procedure has become popular just in the five years prior to trial. Nevertheless, he testified that the surgery is the same. The difference is the method of incision.
An expert witness is qualified by knowledge, skill, experience, training or education and may testify in the form of an opinion or otherwise. La. C.E. art. 702. Thus, Dr. Walker was qualified to testify as an expert witness in this case.
La. R.S. 9:2794 provides:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., ... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Defendant and Dr. Walker are both general surgeons. As a general surgeon, Dr. Walker was entitled to testify as to the standard *466 of care of that specialty. In addition, it is appropriate to allow a specialist in one field to give expert testimony as to the standard of care applicable to a procedure performed by both disciplines. Ricker v. Hebert, 94-1743 (La.App. 1st Cir. 5/5/95), 655 So.2d 493, 495. Accordingly, we find that the trial judge did not err in allowing Dr. Walker to testify as to the standard of care for general surgeons performing the surgical procedure herein.
Defendant next asserts that the trial judge erred in granting the new trial and finding that defendant testified that had he injured the hepatic duct, he would have committed malpractice. Defendant complains that the trial judge ruled from the bench after hearing defendant's testimony that defendant did not commit malpractice. He asserts that the ruling granting the motion for new trial was over one month later and that he reversed the judgment over one year later. Defendant submits that the trial judge's memory was more accurate when he first ruled. In this respect, defendant asserts that two theories were expounded for the reason that the bile leaked into plaintiff's abdomen. First, it was suggested that there could have been an accessory duct connected to the gallbladder in addition to the cystic duct, which is a rare variation on the anatomy, and that duct was too small to be seen at the time of surgery. Defendant asserts that duct could have been the cause of the bile leakage. Another theory was that the cautery instrument used during surgery caused a burn in the wall of the right hepatic duct, causing the tissue to necrose over several days and eventually collapse. In turn, the collapsed wall could have led to leakage. In either case, defendant testified that there was no negligence. He further testified that the right and left hepatic ducts are usually found inside the liver, where it would not be subject to injury by the surgeon. If it were, as sometimes happens, outside the liver, it could be burned, but that it would not be negligent to do so. Defendant stated it would only be negligence if one of the large ducts was completely cut, which did not happen in this case. Defendant asserts that there was confusion regarding the distinction he made between a transection of a duct and a burn on the wall of a duct. He contends that the trial judge took his testimony out of context when he concluded that defendant "admitted that if he damaged the right hepatic duct, it would be considered negligence."
Plaintiff argues that the trial judge stated in the hearing for new trial, one month after the trial, that he was unable to move on to the next case because he had been going over and over the testimony in this case. The judge stated that he remembered defendant testifying that if he cut the right hepatic duct, he breached the standard of care. He also stated that the preponderance of the other evidence, i.e. X-rays and the endoscopic retrograde cholangio-pancreatogram (E.R.C.P.) studies indicated that the leakage came from the right hepatic duct. This was confirmed when the leakage stopped after the surgery in which a stint (a bypass tube at the site to relieve the pressure so that the leak can be treated) was placed at that duct to stop the leakage. One appropriate reason for a motion for a new trial is to get the trial judge to reconsider his reasons and judgment. Thus, the trial judge realized that he erred in his first ruling and granted the new trial so that he could review the transcripts of the trial testimony. In addition, he stated that he reviewed the evidence over and over before rendering his final decision. Plaintiff also asserts that the trial judge did not misconstrue the testimony.
The evidence shows that, in this procedure, the surgeon places two clips on the cystic duct, which leads and connects to the gallbladder, to stop the flow of bile. He then cuts the cystic duct between the two clips to prevent leakage and removes the gallbladder. The radiological studies show that there was no rare accessory duct in plaintiff's anatomy of the area, as confirmed by the testimony of Dr. Reubin Chrestman, III, a diagnostic and nuclear medicine radiologist. He based his opinion on the X-rays and E.R.C.P. studies (where a tube with a scope is placed down the patient's throat or nose to view the area). Based on these studies, Dr. Chrestman further testified that there was a bile leak and that it clearly came form the right hepatic duct, close to the point at which the right and *467 left hepatic ducts branch off from the main (common) hepatic duct, right outside of the liver and the point where they enter the liver. He testified that had there been an accessory duct involved, something would have shown in the studies. In addition, defendant admitted at trial that neither he nor his assistant nor the pathologist saw an accessory duct, nor was one attached to the gallbladder when it was removed. Defendant stated that such a duct would have been 1 to 2 millimeters in diameter, which the evidence showed, could be seen with the naked eye. However, Dr. James Dowling, defendant's expert, testified that a small accessory duct would show up later only as a leak, because if it was cut with the electrocautery, there would not be a stump left to see. The only notice of this would be the appearance of fluid several days later after the tissue dies.
In regard to whether there was a burn, defendant testified that the right hepatic duct would have had to be located in an abnormal position such that it was in the surgical field of the cystic duct to be in a position to be burned. Otherwise, it would be well away from a burn risk. However, defendant testified that the right hepatic duct was in the normal anatomic position and he did not need to get close to it. Thus, by his own testimony, a burn was very unlikely. Furthermore, the testimony shows that defendant indicated that any injury to the hepatic duct would be negligent. He said that "it should not happen, or if the duct is completely cut through, we should recognize it...."
The evidence preponderates that the source of the leak was the right hepatic duct. Defendant testified that an injury to this area should not happen. This is because the evidence shows that the right and left hepatic ducts are outside of the surgical field for this type of surgery, in a normal anatomy, as here. Dr. Walker testified that the injury in this case to the right hepatic duct was negligence. Based on the evidence in this case, we cannot state that the trial judge was manifestly erroneous in reversing his initial decision, granting the motion for new trial, concluding that defendant breached the standard of care and rendering judgement in favor of plaintiff.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of appeal to be paid by appellant.
AFFIRMED.
NOTES
[1] Plaintiff also filed suit against East Jefferson Hospital, but later voluntarily dismissed it.