726 So.2d 417 (1998)
Mack RICHARDSON, Plaintiff-Appellee,
v.
STATE of Louisiana, et al., Defendant-Appellant.
No. 98-918.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
Rehearing Denied January 21, 1999.
*418 Joseph Texada Dalrymple, for Mack Richardson.
Carey Rauhman Holliday, Baton Rouge, for State.
Before PETERS, SULLIVAN and PICKETT, JJ.
SULLIVAN, Judge.
The State of Louisiana, through the Louisiana Health Care Authority Huey P. Long Memorial Hospital, appeals a judgment against it in favor of Mack Richardson in his suit for medical malpractice. In its appeal, the State assigns seven errors committed by the trial court in the trial of this matter. For the following reasons, we affirm the judgment in favor of Mack Richardson and against the State of Louisiana.

FACTS
Mack Richardson was shot in the upper right leg in the late evening of August 8, 1992. After being shot, Mr. Richardson drove himself to the Huey P. Long Memorial Hospital in Pineville, Louisiana, where he was treated in the emergency room. X-rays taken at that time revealed that the bullet was shattered in his leg. Mr. Richardson returned to the hospital on August 12, 1992, complaining of pain. On that visit, drainage from the wound was noted, and x-rays of his right femur were taken. The x-rays did not reveal anything different from the initial xrays taken on August 9.
On August 16, 1992, Mr. Richardson returned for a recheck of his leg. The hospital's record of his visit indicates he reported decreased swelling with no redness, bleeding, or discharge. It was noted that he complained of continued discomfort with ambulation. Mr. Richardson returned again to the hospital on August 21. The record of that visit indicates he was in a wheelchair and that his wound was healing well with minimal yellow discharge. He was instructed to clean the wound and to ambulate as tolerated.
On August 22, 1992, Mr. Richardson returned to the hospital with a displaced fracture of the right femur, which was some distance below the area of the August 8 gunshot wound. Mr. Richardson and Georgia Kirts, his girlfriend, described the events surrounding the fracture of his leg. Both testified that Mr. Richardson had been watching a football game on television when *419 he stood up from the sofa and started to take a step forward. As he stepped forward with his right leg, they heard a snap, then Mr. Richardson fell to the floor in severe pain. Shane Kessler, an off-duty emergency medical technician, arrived at Mr. Richardson's home within minutes of his fall. Upon arrival at the home, he heard Mr. Richardson's complaints of severe pain and his explanation of his injury. Mr. Kessler's testimony of Mr. Richardson's description of his injury was the same description given by Mr. Richardson and Ms. Kirts at trial.
The testimony of Mr. Richardson and Ms. Kirts was contrary in some respects to the information contained in the hospital's records for the visits of August 16 and August 21. Mr. Richardson testified that on August 16 he complained of continuing pain in his leg and that it hurt to walk on his leg. He and Ms. Kirts both testified that on his visit of August 21 he had to use a wheelchair because of the pain in his leg and that he complained to the doctor that his leg was "really hurting bad." Mr. Richardson testified that in response to his complaints, the doctor commented that his leg should not be hurting as much anymore and that he should be up and walking. A prescription for a new pain reliever was given to Mr. Richardson at that time, and he was instructed to begin walking on his leg.
On cross-examination, Mr. Richardson testified he was never examined by a nurse or by the doctor on August 21 and that the doctor asked Ms. Kirts, who is an occupational therapy assistant at another hospital, the status of his wound. According to Mr. Richardson, he was never touched by a nurse or doctor on the August 21, 1992 visit. Ms. Kirts' testimony was the same. She also testified that he never got out of the wheelchair on that visit.
Mr. Richardson filed suit against the State alleging Huey P. Long Hospital was negligent in the treatment administered to him for the gunshot wound to his leg, and that as a result of the negligence a fracture of his right femur went undetected, and he suffered a distal 1/3 transverse femur fracture with posterior displacement of the distal fragment on August 22, 1992.
The State of Louisiana answered the petition and demanded a trial by jury, pursuant to a 1993 amendment to La.R.S. 13:5105. An order for trial by jury was signed by the presiding judge. However, plaintiff then filed a motion to strike the jury, which was granted. An application for supervisory writs filed by the State with this court was denied, and the matter was tried before the trial court on August 7, 1997.

LAW

Right to a Jury Trial
On appeal, the State's first assignment of error is that the trial court erred in striking the jury trial and that this matter should be remanded to the trial court for a jury trial. Mr. Richardson filed his claim under the medical malpractice act on August 5, 1993, requesting that his claim be presented to a medical review panel. La.R.S. 13:5105 was amended in 1993 to grant the right to trial by jury to the State of Louisiana and all of its subdivisions; the amendment became effective January 1, 1994. Mr. Richardson filed this lawsuit on July 25, 1995.
In Boone v. State of Louisiana, Through Department of Health and Hospitals, 97-321 (La.App. 3 Cir. 3/6/98); 709 So.2d 300, this court determined that it is the lawsuit filed after the conclusion of the medical review panel, and not the claim filed under the medical malpractice act requesting a medical review panel, that determines whether the 1993 amendment to La.R.S. 13:5105 is applicable. The filing of the claim for the medical review panel is not equivalent to filing suit. In Boone, as in this case, the plaintiff filed his claim for review prior to January 1, 1994, however, he did not file his lawsuit until July, 1995. We held the trial court erred in denying the State a trial by jury. Accordingly, the trial court committed reversible error when it failed to grant the State a trial by jury as requested.
The State argues that, because of the trial court's error in denying it a trial by jury, we must remand the matter for trial by jury. However, in Gonzales v. Xerox Corp., *420 320 So.2d 163 (La.1975), the supreme court held that when a trial court committed reversible legal error and the entire record is before the appellate court, the appellate court is required to review the case de novo and render a judgment on the merits. In Citgo Petroleum Corp. v. Yeargin, Inc., 95-1574 (La.App. 3 Cir. 2/19/97); 690 So.2d 154, this court determined two defendants' requests for trial by jury on all issues was wrongfully denied when the trial court refused to allow the issue of insurance coverage to be decided by the jury. The judgment of the trial court was reversed, and the matter was remanded for a trial by jury. The supreme court granted writs and remanded the matter to us to decide the matter on the record. For these reasons, We will decide this matter on the record before us.

Liability
Medical malpractice actions are governed by La.R.S. 9:2794. The plaintiff in a medical malpractice action must prove:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The plaintiff must show more probable than not that he suffered the injury complained of because of the defendant's conduct. Where it is equally plausible the injury resulted from something other than defendant's negligent conduct, the plaintiff has not carried his burden of proof. Alex v. Dr. X, 96-1196 (La.App. 3 Cir. 3/5/97); 692 So.2d 499.
Mr. Richardson's case is essentially based upon two premises. First, he argues that it is the standard of care to know that xrays do not always show the existence of fracture. Second, he argues his right leg should have been x-rayed on either the August 16, 1992 visit or the August 21, 1992 visit because of his continued complaints of inordinate pain. The State defends the case arguing that Mr. Richardson failed to present expert testimony to establish the applicable standard of care, and that every physician who reviewed the case determined the treatment rendered by Huey P. Long Hospital was appropriate and met the standard of care.
Six physicians testified at the trial. The medical review panel, all of whom testified at trial, consisted of Dr. Fred Reid, an emergency room physician, Dr. Vanda Davidson, an orthopedist, and Dr. Lucius Andrews, Jr., an emergency room physician. The remaining physicians who testified were Mr. Richardson's treating physician for the fracture of his femur, Dr. Robert Treuting; the radiologist who had interpreted the x-rays taken of Mr. Richardson's femur on August 9 and 12, Dr. Joseph Rankin; and, plaintiff's expert, a pathologist certified in anatomic and forensic pathology, Dr. George McCormick.
The physicians questioned about the x-rays taken August 9 and 12 agreed that no fracture was evidenced on those x-rays. However, one member of the review panel testified the x-rays of August 9 were not good enough to rule out fracture at the site of the August 22 fracture site, and another physician testified the x-rays of August 12 did not include the August 22 fracture site. All of the physicians testified that an occult or hairline fracture can be present but not seen on even the finest x-rays and that such fractures become more evident on an x-ray with the passage of time because of resorption of the bone *421 around the fracture site or because of physical stress on the fracture.
Dr. Andrews and Dr. Davidson testified that they did not see any deviation from the standard of care in the treatment rendered by the State. These opinions were based upon the medical records alone. However, Dr. Davidson, along with Dr. Treuting and Dr. McCormick, were of the opinion that continued complaints of pain and pain with walking as described by Mr. Richardson and Ms. Kirts on August 16 and 21 warranted additional x-rays to determine the cause of the pain. Dr. Davidson explained that consideration should have been given to a fracture with continued complaints of pain in a leg that was two weeks post gunshot wound, and x-rays should have been ordered. Additionally, Dr. Treuting testified he would not have instructed the patient to walk on the leg with the continued complaints of pain. Dr. McCormick's opinion was consistent with Dr. Davidson's and Dr. Treuting's.
Dr. Andrews testified that if Mr. Richardson's complaints of pain were inconsistent with the diagnosis of a gunshot wound, he would have been concerned. Dr. Andrews was very evasive when questioned about continued complaints of pain and the need for additional x-rays stating it would depend on the "zen" he felt at the time he examined the patient, as to whether or not he would order additional tests or x-rays. He believed Mr. Richardson's pain would have been recorded in his chart, if it was as bad as he described.
As noted above, the testimony of Mr. Richardson and Ms. Kirts about Mr. Richardson's complaints of pain at the hospital on August 16 and 21 conflicts with the medical records. Certified medical records are prima facie evidence of their content but can be rebutted or contradicted. We believe Mr. Richardson's and Ms. Kirts's testimony that Mr. Richardson did complain of pain on August 16 and severe pain on August 21.
The case of Ricker v. Hebert, 94-1743 (La. App. 1 Cir. 5/5/95); 655 So.2d 493, discusses at length the issues of standard of care and breach of the applicable standard of care. The following excerpts of that discussion are pertinent to this case:
Where the procedure alleged to be negligently performed is one that is not limited to a particular specialty, and where there is no showing that the standard of care is different for different medical disciplines, an expert with knowledge of the requisite procedure should be allowed to testify regarding the standard of care for performing the procedure. Of course, the party offering such expert must show the witness's expertise, skill, and training in the procedure.
....
When the same treatment for the same condition is performed by members of more than one health care discipline, an expert health care professional having training, knowledge, and experience in performing the procedure in question may testify regarding the standard of care for performing the procedure. There was no evidence that the standard of care required of an oral surgeon was either higher or lower than that required of an ENT. Thus, either an oral surgeon or an ENT could testify as to the standard of care in treating a fractured mandible.
....
Furthermore, while [the physicians] were not asked the precise question of whether defendant violated the standard of care required of ENT's in treating plaintiff's fracture, they testified in detail how, in their opinion, defendant performed the procedure improperly.
Id. at 495-496.
There was no showing by the State that the treatment administered to Mr. Richardson in the emergency room of the Huey P. Long Hospital was limited to one specialty or that the standard of care applicable to it was any different than the standard of care testified to by Dr. Treuting, Dr. Davidson, and Dr. McCormick. The State did argue that Dr. McCormick was not qualified to render an opinion regarding the standard of care because he is a pathologist and has not treated a living patient in thirty years. Dr. McCormick testified that Mr. Richardson's complaints of pain would have caused "any person licensed to practice medicine in this state ... to look for the cause of the pain." *422 This opinion was supported by Dr. Davidson's testimony and by Dr. Treuting's testimony that "in terms of basic medicine from school" Mr. Richardson's leg should have been examined and another set of x-rays ordered because of his complaints of pain.
We conclude that Mr. Richardson proved the applicable standard of care in this case and that the standard required additional xrays of his right femur because of his complaints of pain on August 16 and 21. The hospital's failure to order and obtain additional x-rays was a breach of that standard. The next inquiry is whether Mr. Richardson suffered the fracture to his right femur because of the State's breach of the standard of care.
Dr. McCormick is board certified in anatomic and forensic pathology. He has served as a coroner since 1983. As a forensic pathologist, Dr. McCormick diagnoses wounds in living patients to determine how they were made and if they have any legal significance. He also answers questions about pain, how it occurs, why it occurs, and how significant it is. In his opinion, the fracture was caused by the original gunshot wound which struck the femur. He explained that when a low velocity bullet from a handgun enters an extremity and shatters without striking another object before entering the flesh, the bullet has struck bone. All of the other physicians questioned on this point agreed with Dr. McCormick.
Dr. McCormick further explained that it is well known in forensic pathology that a fracture can occur in bone at a site distant from the force of impact of a stressor, regardless of the type of stressor. His testimony was not refuted. The other physicians, except Dr. Andrews, basically agreed with Dr. McCormick's opinion that a fracture could occur distant from the point of impact, but they did not believe a fracture could occur as far from the point of impact as indicated in this case. Dr. Andrews testified he would not expect a fracture to result at a site away from a gunshot wound, but explained he would defer to a forensic pathologist or military medical personnel for an opinion on the issue.
Dr. McCormick testified that it was more probable than not that the fracture to Mr. Richardson's femur occurred because there was a structural weakness of the bone caused by the gunshot wound and that such a fracture would not have occurred in an otherwise healthy man without prior structural weakness. In his opinion, there was no reason, but the gunshot wound, for the fracture. Dr. McCormick's conclusion is substantiated, not only by the testimony of Mr. Richardson and Ms. Kirts, but also by the testimony of Mr. Kessler.
We accept Dr. McCormick's opinion on the issue of causation and find that the State's breach of the standard of care was a cause-in-fact of the displaced fracture of Mr. Richardson's right femur.

Damages
Our review of the record supports the award of $45,000.00 in general damages made by the trial court. Mr. Richardson suffered a distal 1/3 transverse femur fracture with posterior displacement of the distal fragment. All of the physicians questioned regarding the injury agreed that it is very painful. Due the displacement of the fracture, Mr. Richardson had to undergo surgery for the placement of a rod through his hip into the femur. He was hospitalized for four days. He was in traction for two days before the surgery could be performed. The fracture required more than one year to heal. During most of that time, Mr. Richardson had to use crutches to walk.
Mr. Richardson became depressed, hostile, and angry after this injury. His relationship with Ms. Kirts and their daughter, who was ten months old at the time of the injury, as well as other family members and friends was affected. The State did not assign the amount of the award as error, and Mr. Richardson did not answer the appeal seeking an increase in the award, therefore, we will not address the issue of damages further.
There are two remaining assignments of error asserted by the appellant which were not addressed in our de novo review of this matter. First, the trial court allowed the depositions of Dr. Rankin and Dr. Treuting to be introduced into evidence, even though these witnesses were present and testified. *423 Second, the trial court allowed the position paper filed by Mr. Richardson with the medical review panel to be introduced into evidence. There was no prejudice to the State by the admission of the depositions or the position paper since neither had a substantial effect on the outcome of the matter, and any error in allowing them into evidence was harmless. LaCombe v. Dr. Walter Olin Moss Reg'l Hosp., 617 So.2d 612 (La.App. 3 Cir.1993); Agricultural Equip. Co., Inc. v. Rozas, 488 So.2d 241 (La.App. 3 Cir.1986).

DECREE
For the foregoing reasons, the judgment of the trial court in favor of Mack Richardson and against the State of Louisiana, through the Louisiana Health Care Authority Huey P. Long Memorial Hospital, in amount of $45,000.00, together with legal interest thereon from August 5, 1993, until paid, together with all costs of court is affirmed. Costs of this appeal are assessed to the State.
AFFIRMED.