# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-340


ELSA GAJEWSKY, ET AL.

VERSUS

JOHN T. NING, M.D., ET AL.


************

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 73,458
HONORABLE LESTER P. KEES, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Billy Howard Ezell, Judges.


**AFFIRMED.**


R. Scott Iles
Attorney at Law
Post Office Box 3385
Lafayette, Louisiana  70502-3385
(337) 234-8800
Counsel for Plaintiffs/Appellants:
    Elsa Gajewsky
    Thomas Gajewsky

Marc W. Judice
Judice & Adley
Post Office Drawer 51769
Lafayette, Louisiana  70505-1769
(337) 235-2405
Counsel for Defendants/Appellees:
    John T. Ning, M.D.
    Louisiana Medical Mutual Insurance Company

**SULLIVAN, Judge.**

Plaintiffs in this medical malpractice case appeal the jury's verdict, which found no negligence on the part of the defendant physician. For the following reasons, we affirm.

*Facts*

Elsa Gajewsky and her husband filed a claim with the Louisiana Patient's Compensation Fund against her former urologist, Dr. John Ning, complaining that he rendered substandard medical care to Mrs. Gajewsky during the period August 27, 2002 through February 1, 2003. Mrs. Gajewsky sought treatment from Dr. Ning for mixed symptoms of incontinence. Testing by Dr. Ning revealed that Mrs. Gajewsky's incontinence was the result of "intrinsic sphincter deficiency" (ISD), an anatomical abnormality of the bladder where the sphincter of the bladder does not function properly. While under Dr. Ning's care, Mrs. Gajewsky underwent a SurX radio frequency bladder neck suspension (SurX procedure) to alleviate her symptoms, but the procedure did not give her the relief she sought.

Mr. and Mrs. Gajewsky asserted in their claim that the SurX procedure was not appropriate for treating ISD and that Dr. Ning's performance of the procedure on Mrs. Gajewsky fell below the standard of care for physicians treating women with urological problems. They sought damages for pain and suffering and loss of consortium and reimbursement of unnecessary medical expenses.

A jury trial was held October 29 and 30, 2007. After deliberation, the jury returned a verdict in favor of Dr. Ning, finding that he had not committed malpractice. The trial court denied a Motion for New Trial or in the alternative

1

Motion for Judgment Notwithstanding the Verdict filed by the Gajewskys, and they filed this appeal.

## *Assignments of Error*

The Gajewskys argue that the jury's verdict of no negligence by Dr. Ning in his performance of the SurX procedure is wrong. They assert that the SurX procedure was not appropriate treatment for ISD and that Dr. Ning's performance of an unnecessary medical procedure constitutes medical malpractice. They also complain that the trial court's denial of the Motion for New Trial or in the alternative Motion for Judgment Notwithstanding the Verdict was error.

## *Standard of Review*

The manifest error-clearly wrong standard of review applies to appellate review of a jury's factual findings. This requires reviewing the record in its entirety and determining that there is no factual basis for the findings and that the findings are manifestly erroneous or clearly wrong to reverse the jury's findings. *Cosby v. Holcomb Trucking, Inc.*, 05-470 (La. 9/6/06), 942 So.2d 471. In performing this review, the appellate court cannot reweigh the evidence or substitute its own findings for the jury's findings, and where there are two permissible views of the evidence, the fact finder's choice cannot be manifestly erroneous or clearly wrong. *Id.*

## *Discussion*

Medical malpractice actions are governed by La.R.S. 9:2794, which requires the plaintiff in a medical malpractice action to prove:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty

2

involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

The plaintiff in a medical malpractice case must show more probably than not that his alleged injury is the result of the defendant physician's conduct. "Where it is equally plausible that the injury resulted from something other than the defendant's negligent conduct, the plaintiff has not carried his burden of proof." *Richardson v. State,* 98-918, p. 6 (La.App. 3 Cir. 12/9/98), 726 So.2d 417, 420, *writ denied*, 99-483 (La. 4/1/99), 742 So.2d 561. *See also Fournet v. Roule-Graham*, 00-1653 (La.App. 5 Cir. 3/14/01), 783 So.2d 439, *writ denied*, 01-985 (La. 6/15/01), 793 So.2d 1242.

***Did Dr. Ning's performance of the SurX procedure constitute negligence?***

Mrs. Gajewsky sought treatment from Dr. Ning for incontinence. She complained that she could not hold her urine. Dr. Ning attempted to alleviate Mrs. Gajewsky's symptoms with medicines and injecting collagen in the tissue around the sphincter of the bladder to support it without success. Mrs. Gajewsky told Dr. Ning that she did not want to undergo a surgical procedure, so he suggested the SurX procedure as a treatment option. The SurX is a device which treats the tissue parallel to the urethra with thermal energy to shrink the collagen in the tissue and tighten it in order to provide better support for the urethra. The procedure involves the incision of tissue inside the vagina in an area that is parallel with the urethra for the insertion of the SurX device. It is performed under local anesthesia, rather than

3

general anesthesia, and is considered a minimally-invasive procedure. Mrs. Gajewsky enjoyed some improvement after the procedure, but her symptoms recurred and continued at the time of trial.

Dr. Ning closed his office in March 2003, and he referred Mrs. Gajewsky to another urologist, Dr. Chuen Kwok. Mrs. Gajewsky remained uninterested in undergoing any surgical procedure, and Dr. Kwok treated her with medications and prescribed exercises, which helped but did not provide her the relief she sought. Thereafter, Mrs. Gajewsky went to Dr. William Kubricht, III for treatment. Dr. Kubricht's treatment also did not provide Mrs. Gajewsky with complete relief of her incontinence problem.

Dr. Kubricht was the Gajewskys' expert witness at trial. He has never employed the SurX procedure in treating his patients. Dr. Kubricht testified that the SurX procedure is not considered treatment for ISD and explained that other than medicine or physical therapy, collagen injections and a bladder neck sling, which require surgery under general anesthesia, are the only options available for treating ISD. He opined that the SurX procedure is not an adequate alternative for treating Mrs. Gajewsky's ISD.

During cross-examination, Dr. Ning's attorney had Dr. Kubricht quote a response from his discovery deposition which was completely at odds with his trial testimony elicited by the Gajewskys' attorney. During his discovery deposition, Dr. Kubricht had testified that the SurX procedure was "certainly a reasonable alternative to treat her problem. . . . I doubt that many would have recommended it, but it was an FDA approved alternative to treatment for her." Dr. Kubricht further

testified in his trial deposition that he still believed the SurX procedure was "an alternative" to Mrs. Gajewsky's problem.

On re-examination by the Gajewskys' attorney, Dr. Kubricht was asked whether he believed Dr. Ning's treatment of Plaintiff was negligent. He initially stated that Dr. Ning was "under-aggressive." He then reiterated that a bladder sling and collagen injections are considered the standard of care for the treatment of ISD. Lastly, Dr. Kubricht testified:

> [I]f you assume from the beginning she had ISD and you knew that from her urodynamics, the standard of care was a sling and collagen. So if you . . . consider it negligent to do a less tested, less potentially successful operation in the face of a patient that's . . . agreeable to have surgery, then you can make th[e] assumption of negligence. If you believe that he was acting as merely a facilitator for a patient that's limiting his care, then no. But either way, she went to the operating room.

Dr. Barbara Levy, a gynecologist who limits her practice to treating women with urological problems and who is an expert in the use of the SurX procedure, served as Dr. Ning's expert. Dr. Levy agreed with Dr. Kubricht that the accepted management options for ISD are a bladder sling and collagen injections. She also agreed with the Gajewskys' attorney that Mrs. Gajewsky was not a candidate for the SurX procedure and that it was not the standard of care for her ISD in light of the urodynamic studies performed on her. However, Dr. Levy did not agree that Dr. Ning's use of the SurX procedure was negligent. She explained:

> In other words, the company tells you this is how you should do it, this is what the FDA trials looked at, and here's why theoretically we think it shouldn't work for these other conditions. That doesn't mean that an experienced physician couldn't, in an individual case, have some reasoning behind using a device in a way that's off label.
>
> That's not necessarily below the standard of care or negligence.

Thereafter, Dr. Levy pointed out that Mrs. Gajewsky's continued complaints of incontinence to Drs. Kwok and Kubricht were related to the "overall disease" process of ISD, not to the performance of the SurX procedure performed by Dr. Ning.

Mrs. Gajewsky's complaints remained the same after Dr. Ning's treatment. Indeed, her complaints to Drs. Kwok and Kubricht were the same complaints she made initially to Dr. Ning. While Mr. Gajewsky testified that their sexual relations were terminated because of the SurX procedure, Mrs. Gajewsky admitted on cross-examination that she had ceased having sexual relations because her incontinence embarrassed her and caused her to lose her desire for sex, not because of the SurX procedure.

We find no error with the jury's verdict. Dr. Kubricht gave diametrically opposed opinions in his discovery testimony and trial testimony, which gave the jury reason to ignore his opinion that Dr. Ning committed malpractice and accept Dr. Levy's opinion that he did not, even though the SurX procedure is not the standard of care for ISD. Furthermore, the Gajewskys did not prove that Dr. Ning's performance of the SurX procedure on Mrs. Gajewsky caused her any damage, as her symptoms before and after the procedure were the same, and her loss of desire for sex was a result of her ISD symptoms, not the SurX procedure.

### Was Denial of the Motion for New Trial or in the alternative, Motion for Judgment Not Withstanding the Verdict Error?

In their second assignment of error, the Gajewskys urge that the trial court erred in denying their Motion for New Trial or in the alternative, Motion for Verdict Notwithstanding the Verdict (JNOV). This court addressed the standard for reviewing the denial of a motion for new trial and motion for JNOV in *Darbone v.*

*State*, 01-1196, pp. 3-4 (La.App. 3 Cir. 2/6/02), 815 So.2d 943, 947, *writ denied*, 02-732 (La. 5/31/02), 817 So.2d 94 (alteration in original):

> In *Broussard v. Stack*, 95-2508, pp. 14-16 (La.App. 1 Cir. 9/27/96); 680 So.2d 771, 779-81 (citations omitted), the court considered the standards of appellate review for the denial of a motion for JNOV, grant of a motion for JNOV, and denial of a motion for new trial, holding:
>
>> In ruling on a motion for judgment notwithstanding the verdict (JNOV) under LSA C.C.P. art. 1811, the trial court is required to employ the following legal standard: A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue. The trial judge must construe the evidence and make inferences in favor of the party opposing the motion. Additionally, in applying this standard, the court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. If there is substantial evidence opposed to the motion of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. Stated more simply, a trial court can grant a JNOV only when a jury's verdict is one which reasonable people could not have rendered; if reasonable persons could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper.
>>
>> The standard to be applied by the appellate courts in reviewing the grant or the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous.
>>
>> . . . .
>>
>> The motion for new trial requires a less stringent test than for a JNOV in that such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. In considering a motion for new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness.

7

As previously discussed, the evidence establishes that the jury's determination that Dr. Ning's performance of the SurX procedure on Mrs. Gajewsky was not negligent is supported by the record and is reasonable under the facts established therein. Therefore, we find no error with the trial court's denial of the Motion for New Trial or in the alternative, Motion for Judgment Notwithstanding the Verdict.

### *Disposition*

The judgment of the trial court is affirmed. All costs of this appeal are assessed to the Gajewskys.

**AFFIRMED.**